[Nos. 13238-9-II; 13422-5-II.   Division Two.   June 13, 1991.]

CASCADE BRIGADE, ET AL, *Appellants,* v. ECONOMIC
DEVELOPMENT BOARD FOR TACOMA-PIERCE
COUNTY, ET AL, *Respondents.*

---

*Stephen H. Demarest* and *Demarest & Associates,* for appellants.

*Ronald E. Thompson, Stephen D. Thompson,* and *Thompson, Krilich, LaPorte & Tucci, P.S.,* for respondent Economic Development Board.

*John W. Ladenburg, Prosecuting Attorney,* and *Douglas W. Vanscoy, Deputy,* for respondent Pierce County.

WORSWICK, C.J.—Starting a lawsuit is no trifling thing. By the simple act of signing a pleading, an attorney sets in motion a chain of events that surely will hurt someone. Because of CR 11, that someone may be the attorney. We affirm a judgment for $10,966.70 in CR 11 sanctions against attorney Stephen H. Demarest.

Demarest, a Tacoma lawyer, signed a complaint on behalf of Cascade Brigade for declaratory and injunctive relief against Pierce County and the Economic Development Board for Tacoma–Pierce County. The Board is a private, nonprofit organization formed in 1977 to encourage

economic growth. Pierce County and other municipalities provide it with funds pursuant to contract. The Board had proposed to the Pierce County Council land use changes that would have permitted a business development on agricultural land near the Puyallup River. Cascade Brigade, an organization of Edgewood area residents, opposed the development.

The complaint, filed on May 12, 1989, sought to enjoin Pierce County's payment of public funds to the Board. It alleged that such payment violated article 8, section 7 of the state constitution,[1] and also violated competitive bidding laws. The complaint also prayed for a declaration that the Board's meetings, which some public officials attended as Board members, violated the Open Public Meetings Act of 1971 (RCW 42.30). The Superior Court dismissed the case by summary judgment. We affirmed upon a motion on the merits. The underlying issues of the lawsuit are no longer before us; the Demarest sanctions are all that remain.[2]

The trial court purported to assess the sanctions under both RCW 4.84.185 and CR 11, but inasmuch as the statute only allows fees against a party for a frivolous lawsuit, and Demarest is not a party, only CR 11 would authorize fees against him as a lawyer. CR 11 provides:

> Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record . . . The signature of a party or of an attorney constitutes a certificate by the party or attorney that the party or attorney has read the pleading, motion, or

---

[1]Const. art. 8, § 7 provides:
"**CREDIT NOT TO BE LOANED.** No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation."

[2]Our commissioner affirmed both the judgment dismissing Cascade Brigade's claims and the award of attorney's fees. A panel of judges refused to modify the ruling on the underlying merits, but agreed to review the issue of attorney's fees. RAP 18.14(i).

legal memorandum; that to the best of the party's or attorney's knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee.

■■ Three conditions must be met before an attorney can be subjected to CR 11 sanctions: (1) the pleading, motion, or memorandum must not be well grounded in fact; (2) it must not be well grounded in law; and (3) viewed objectively, the attorney must have failed to make a reasonable inquiry into the factual or legal basis of the action. *Rhinehart v. Seattle Times, Inc.,* 59 Wn. App. 332, 341, 798 P.2d 1155 (1990). The trial court has discretion to determine whether CR 11 has been violated. *John Doe v. Spokane & Inland Empire Blood Bank,* 55 Wn. App. 106, 780 P.2d 853 (1989). If the court determines that a violation occurred, the court must impose "appropriate" sanctions. CR 11; *Miller v. Badgley,* 51 Wn. App. 285, 300–01, 753 P.2d 530, *review denied,* 111 Wn.2d 1007 (1988). The trial court retains broad discretion as to the nature and scope of sanctions, which can include the full award of attorney's fees. *Rhinehart v. Seattle Times, Inc.,* 59 Wn. App. at 341; *Miller v. Badgley,* 51 Wn. App. at 303. When imposing sanctions, the court must make an adequate record for appellate review. *Rhinehart,* 59 Wn. App. at 341–42.

The trial judge here was first moved to impose sanctions for Demarest's failure to submit a single fact in support of his motion for summary judgment. The judge elaborated, in denying Demarest's motion for reconsideration, saying that Demarest had filed suit without "one fact to support your

position" and had, moreover, "no basis in law" for the suit.[3] The judge was right. Neither facts nor law supported Demarest's position when he filed the complaint or when he moved for summary judgment, and a reasonable inquiry would have revealed this to him.

We adopt the Ninth Circuit's approach to reviewing sanctions imposed under the federal counterpart to CR 11. The trial court should consider the following factors in deciding whether counsel made a reasonable inquiry:

> [T]he knowledge that reasonably could have been acquired at the time the pleading was filed, . . . the type of claim and the difficulty of acquiring sufficient information, . . . which party has access to the relevant facts, and . . . the "significance" of the claim in the pleading as a whole." . . .

(Citations omitted.) *Townsend v. Holman Consulting Corp.*, 914 F.2d 1136, 1142 (9th Cir. 1990), *vacated*, 929 F.2d 1358 (1991); *Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986).[4] We will apply these factors to the following facts, all established in the record beyond reasonable dispute.

Cascade Brigade retained Demarest on March 1, 1989, to analyze whether the Board was "properly receiving public money." Before filing the complaint, Demarest told his clients in an opinion letter dated March 28 that he had researched the legality of the Board's operations and could "safely say there is a valid basis for suit." As of that date, he had written the Board and talked to its lawyer to inquire into the basis for its receipt of public funds. He had also looked at the state constitution and certain statutes. He was aware that the County received services from the

---

[3]Demarest argues that the judge should have made findings specifying his misconduct. The judge, however, gave reasons, orally and in a letter, that were adequate to apprise us of his reasons. The factual record supports those reasons.

[4]Our courts have described other factors that may be relevant to the inquiry, including the complexity of the factual and legal issues. *Miller v. Badgley*, 51 Wn. App. at 301–02. If the issues are complex, it is all the more reason for counsel to inquire carefully into them before commencing legal action. The issues were not difficult here.

Board, for which it paid pursuant to contract, but he questioned whether the services were obtained by competitive bidding. He also said in his letter that the Board is a "private corporation, separate and distinct from the local government," and "seems" to formulate public policy "without having to comply with the public meetings act."

On June 28, 1989, some 7 weeks after filing the complaint, Demarest moved for partial summary judgment on the constitutional issue only. He had not begun discovery in the action, and later contended in an affidavit that he was unaware of the existence of the funding contracts between the County and the Board. This contention was not credible. Demarest referred to the contracts twice in his opinion letter of March 28. He also knew that RCW 36.01.085 specifically allows counties to contract with nonprofit corporations to further economic development programs. Further, he knew that the legal test for determining whether the expenditure of public funds constituted a gift in violation of the constitution was whether the County received consideration or had a donative intent. *See General Tel. Co. of Northwest, Inc. v. Bothell,* 105 Wn.2d 579, 716 P.2d 879 (1986). Nevertheless, knowing that Pierce County and the Board had contracted for the transfer of funds, that such contracts were authorized by statute, and that case law requires a donative intent for violation of the constitution, Demarest not only filed suit, but moved for summary judgment without having seen the contracts—which are public records—and without advancing any facts to support his motion.

Demarest contends that he did not have to present any facts to support Cascade Brigade's motion for summary judgment because the constitutional issue is purely one of law. He is wrong. Whether or not the County had donative intent plainly rested upon underlying material facts. CR 56(c) requires the moving party to "show that there is no genuine issue as to any material fact". As the moving party, Cascade Brigade had the initial burden of coming forth with its version of specific, evidentiary facts—

not legal conclusions. *Parkins v. Colocousis,* 53 Wn. App. 649, 651, 769 P.2d 326 (1989) (citing *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 757 P.2d 507 (1988)). The outcome of a summary judgment may be based on a legal presumption in the absence of prima facie evidence to overcome it. *King Cy. v. Department of Rev.,* 32 Wn. App. 617, 620, 649 P.2d 126 (1982). These axioms are particularly telling here, where the primary issue was the alleged unconstitutionality of the County's contractual payments to the Board pursuant to RCW 36.01.085. A statute is presumed constitutional; the challenging party bears a heavy burden of proof. *State v. Brayman,* 110 Wn.2d 183, 193, 751 P.2d 294 (1988).

Pierce County and the Board responded with cross motions for summary judgment on all issues. They produced supporting facts, including an affidavit from the Board's president and documents showing that the Board is a "partnership" of public entities[5] and private business, some 22 percent of whose annual budget comes from services contracts with the governmental entities, including Pierce County. Accompanying the affidavit was a copy of a contract between the Board and Pierce County, which provided that Pierce County would pay $75,000 during 1987 and 1988 in exchange for specified services by the Board intended to increase capital development, stimulate employment opportunities, and enlarge the tax base to the County's benefit.

The trial court reached the constitutional issue first, at a hearing on July 28, 1989, and decided the other issues on September 1, 1989. Cascade Brigade, having initially opposed a continuance of the first hearing, later sought to continue the second so as to file responsive affidavits. Despite having propounded interrogatories to the defense,

---

[5]Pierce County; the cities of Tacoma, Puyallup and Fife; the Port of Tacoma; the Tacoma–Pierce County Private Industry Council; the Economic Development Corporation of Pierce County; and the Washington State Department of Trade and Economic Development.

however, it never filed any factual material supporting its own motion or countering defendants'.

By the time of the hearing on defendants' motions for summary judgment on the remaining issues (the lack of competitive bidding and the Open Public Meetings Act of 1971), the defendants had supplied affidavits establishing that the Board is not a public corporation and is, therefore, not subject to the act,[6] and is the only vendor of the economic development services being offered, so competitive bidding is not required.[7] Demarest never offered any controverting facts.

The first three *Townsend* factors are quickly satisfied. All information relevant to the three theories of the complaint was both readily available and easily acquired; the theories were not the least bit complicated. The applicable law was equally straightforward and discoverable by minimal research. The fourth factor is likewise satisfied. The groundless claims are not merely an insignificant part of a larger pleading with overall merit. Both the complaint and the summary judgment proceedings focused entirely on Cascade Brigade's three legal theories. *See Townsend v. Holman Consulting Corp.*, 914 F.2d at 1140–42.

On the constitutional issue, Demarest failed to come forth with any facts to challenge the contractual relationship by which the County spent its funds in exchange for services rendered. He never attempted to overcome the presumption that RCW 36.01.085 is constitutional, and he produced nothing showing that the County's purpose was donative. Reasonable inquiry would have disclosed the contracts; in fact, the record shows that he made inquiry and

---

[6]The Open Public Meetings Act of 1971 pertains to "public agencies", which include state agencies created by or pursuant to statute; municipal corporations and state political subdivisions; subagencies created by statute, ordinance, or other legislative act; and public utility policy groups. RCW 42.30.020(1). The Board is none of these.

[7]Pierce County Code 2.106 requires competitive bidding for services except where only a single source of the services exists.

learned of the contracts, but never obtained or read them before starting the lawsuit.

Likewise, Demarest could easily have learned, through reasonable inquiry, that the Board is a private organization, not subject to the Open Public Meetings Act of 1971; he also could have learned that no other organization competes with it in contracting to promote economic growth, and therefore that the competitive bidding ordinance does not apply.

█ Demarest argues that he should escape CR 11 sanctions because he made a good faith argument to extend existing law so that the Open Public Meetings Act of 1971 would be read to cover organizations such as the Board. This argument fails. His argument was not that existing law should be changed for public policy reasons, but that existing law required the Board's meetings to be open to the public. "Raising the good 'faith' argument for the first time in defense of a motion for CR 11 sanctions is no substitute for conducting preliminary research to discover whether naming particular defendants in a summons and complaint has a proper foundation in law or fact." *John Doe v. Spokane & Inland Empire Blood Bank,* 55 Wn. App. at 123.

Demarest's action in filing suit and moving for summary judgment without facts typifies the shoot–first–and–ask–questions–later approach to the practice of law, an approach that CR 11 was intended to inhibit. *See* Fed. R. Civ. P. 11 advisory committee note (1983 amendment) ("The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule"); *see also Storage Tech. Partners v. Storage Tech. Corp.,* 117 F.R.D. 675, 681–82 (D. Colo. 1987); *Foster v. Michelin Tire Corp.,* 108 F.R.D. 412, 415 (C.D. Ill. 1985); *Duncan v. WJLA–TV,* 106 F.R.D. 4, 5 (D.D.C. 1984). As the trial judge told him:

I think it is totally unjustified for you to file a frivolous action against two entities, put them to the expense of $10,000–plus in attorney's fees and think I'm going to let you off the hook . . .

I'm going to assess [the fees] to you and maybe the lesson you're going to learn is that next time you will evaluate your cases before you file them and put some other person, some adversary to a tremendous . . . expense. That's the duty, Mr. Demarest, of every lawyer . . ..

Although a lawyer cannot engage in formal discovery before a lawsuit, nevertheless it is expected that the lawyer will have a reasonable factual basis with which to begin. Where important facts are easily ascertainable and where telephone calls and correspondence would lead a prudent person to further inquiry before resorting to legal process, the lawyer who simply files suit and waits for the facts to sort themselves out surely will be exposed to CR 11 sanctions if it turns out that no facts support the case. *See In re Kunstler*, 914 F.2d 505, 515–16 (4th Cir. 1990) ("[A] complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions." *Kunstler*, at 516).

We affirm the trial court's award of attorney's fees against Demarest. The record is sufficient for us to ascertain the basis for the amount awarded, $10,966.70 (*see Rhinehart*, 59 Wn. App. at 341); the court considered the fees requested and documented by the Board and Pierce County, found them to be reasonable, and awarded them in full. Demarest does not seriously challenge the amount. The court did not abuse its discretion.

Both the Board and Pierce County seek attorney's fees on appeal and have complied with RAP 18.1. Their claim is based on RAP 18.9(c), which means that the appeal must be "frivolous". While we doubt the utility of that term in connection with CR 11 sanctions and have not used it in analyzing that issue,[8] "frivolous" is a term of art in the

---

[8]We are well aware that the federal courts use the shorthand term "frivolous" in reviewing sanctions under Federal Rule of Civil Procedure 11, requiring the complaint to be both *factually* and *legally* "frivolous" to warrant sanctions (*see, e.g., Townsend v. Holman Consulting Corp.*, 914 F.2d 1136 (9th Cir. 1990), *vacated*, 929 F.2d 1358 (1991)), and we are aware that Division One of this court has embraced this approach. *Bryant v. Joseph Tree, Inc.*, 57 Wn. App. 107, 115–

awarding of fees on appeal under RAP 18.9(c). *See, e.g., Streater v. White,* 26 Wn. App. 430, 434–35, 613 P.2d 187 (1980). The commissioner awarded fees to both respondents on this basis. We affirm that ruling, for given the egregious facts, we find nothing debatable in this appeal. We award reasonable fees on appeal to Pierce County in the amount of $2,224 and to the Board in the amount of $6,076.50. We also affirm the commissioner's determination that Cascade Brigade and Demarest shall each be responsible for paying half of such fees.[9]

Judgment affirmed.

ALEXANDER and MORGAN, JJ., concur.

Reconsideration denied July 30, 1991.

---

16, 791 P.2d 537, *review granted,* 115 Wn.2d 1027 (1990). We decline to employ it. The word "frivolous" is not contained in the rule and its use adds nothing to the process of complex legal reasoning.

[9]It is clear from the record that Cascade Brigade insisted that the trial court's disposition of the underlying issues be appealed. Its position was utterly untenable, given the undisputed summary judgment record.