[No. 13781-0-II.   Division Two.   April 7, 1992.]

WALTER WATSON, *Appellant,* v. CHARLES MAIER, ET AL, *Defendants,* JOHN DOE DUNLEY, ET AL, *Respondents.*

*Richard F. DeJean,* for appellant.

*M. Colleen Barrett* and *Julin, Fosso, Sage, McBride & Mason,* for respondents.

ALEXANDER, J. — A famous lawyer once said: " '[a]bout half of the practice of a decent lawyer is telling would-be clients that they are damned fools and should stop.' "[1] Consistent with that admonition, CR 11 allows courts to sanction lawyers who do not know when to stop. In this case, an attorney filed a suit against a dentist for medical malpractice who was not present during the operation where the alleged malpractice occurred. The trial court, concluding that the lawsuit was not well founded, entered a judgment against the lawyer in the amount of $4,200 for attorney's fees, pursuant to CR 11. We affirm the judgment against him and also assess reasonable fees on appeal.

Walter Watson shattered his jaw in a motorcycle accident on June 5, 1985. Dr. Jackson performed some emergency surgery on his jaw but additional surgery had to be postponed because of airway difficulties Watson suffered in the accident. Dr. Charles Maier and Dr. Jackson completed the

---

[1] Elihu Root, The United States Secretary of State from 1905 to 1909, quoted in *McCandless v. Great Atl. & Pac. Tea Co.*, 697 F.2d 198, 201-02 (7th Cir. 1983).

repair of Watson's jaw 8 days later, on June 13, 1985. Unfortunately, Watson's jaw did not heal properly and, as a result, it was severely recessed. These surgeries form the basis of Watson's malpractice claim.

Respondent, Dr. Dunley, entered the picture almost a year later, in March 1986, when Dr. Maier consulted him about Watson's condition. Soon thereafter, on April 9, 1986, Dr. Dunley assisted Dr. Maier in a surgical attempt to move the jaw forward. Although the operation was performed "without complications", Watson was still left with an extremely recessed jaw. There is, however, no allegation of negligence regarding this latter surgery.

Watson first sought legal help from attorney Richard DeJean in January 1989, more than 3 years after the June 1985 surgeries, but less than 3 years after the April 1986 surgery. He informed DeJean that Dr. Maier had overlooked two fractures in the "first" surgery and that a "second" surgical procedure had been unsuccessful in correcting the resultant malalignment.[2] Watson did not suggest that he thought Dr. Dunley's treatment of him had fallen below acceptable standards.

DeJean obtained Watson's medical records and sent them off to a medical/legal consulting firm in Bellevue on January 25, 1989. Relying solely on the firm's recommendation, he filed suit against both Dr. Maier and Dr. Dunley on April 7, 1989 — just 2 days before the statute of limitations presumably was to run on the April 9, 1986, surgery. DeJean did not name Dr. Jackson in this suit. Instead, he named Dr. Dunley, who had not treated Watson at the time of the allegedly negligent June surgeries. In addition, although Watson had told DeJean that Dr. Maier had negligently overlooked the fractures in the June 1985 surgeries, the complaint alleged malpractice in the April 1986 surgery and did not even mention the June surgeries (on which the statute of limitations had presumably run).

---

[2] While the record is not very clear, it seems that this refers to the June 13, 1985, and April 9, 1986, surgeries, since Dr. Maier did not perform the emergency surgery on June 5, 1985.

Dr. Dunley answered, denying negligence and denying any participation in the June 1985 surgeries. He also counterclaimed for some outstanding charges for the April 1986 surgery and for his attorney's fees and costs, pursuant to RCW 4.84.185, based on the frivolous nature of the suit against him. The defense immediately propounded interrogatories to Watson in an attempt to determine what possible basis there could be for the claim against Dr. Dunley.

The answers, signed by DeJean on September 11, 1989, made it clear that negligence was, in fact, being claimed only for the June 1985 surgeries. When asked to "State with specificity and detail each act and/or omission for which you allege defendant Dunley is liable to you" the following answer was provided:

> This answer will be supplemented at a later time after plaintiff's discovery is completed. However, for the present, plaintiff states that inadequate attention and treatment were given to the sub condylar fractures in the surgeries of 6/5/85 and 6/13/85.

Dunley repeatedly and emphatically stated that he was not involved in the June 1985 surgeries and Dr. Maier confirmed this in a sworn affidavit. Moreover, Watson's hospital and medical records, which DeJean had in his possession, made no mention of any involvement by Dr. Dunley in those surgeries.

Finally, on September 23, 1989, Dunley's counsel sent DeJean the first of many letters demanding that he dismiss the suit against Dunley. In it he threatened to seek CR 11 sanctions if DeJean refused.

Three weeks later, DeJean admitted that there was no claim of negligence for the April 1986 surgery and he agreed to dismiss Dunley from the lawsuit provided that he was given sufficient proof that Dunley was not involved in the June 1985 surgeries. The defense responded with a second sworn statement from Dr. Maier and a stipulation and order for dismissal with prejudice, along with a warning that CR 11 sanctions would be sought if the order was not signed and returned within 10 days.

These submissions apparently did not satisfy DeJean. Despite the fact that the hospital records clearly showed that Dr. Dunley was not involved in the June surgeries, DeJean suspected Dr. Maier and Dr. Dunley were somehow conspiring to cover up the true extent of Dr. Dunley's involvement. His suspicions were prompted by the fact that Dr. Dunley had not billed Dr. Maier for the March consultation. This caused DeJean to wonder if Dr. Maier had also engaged in an unbilled consultation in June 1985 as well, and he demanded copies of all Dunley's records and "chart notes" on Watson.

Dr. Dunley insisted that he had already provided DeJean with all of his records on the case and that he did not have any "chart notes" on Watson. His attorney explained to De-Jean that doctors do not usually bill each other for consultations, but, instead, they bill the patient, and that the consultation fee was included in Dr. Dunley's billing to Watson.

Still unsatisfied, DeJean changed the stipulation and order to provide for "dismissal without prejudice" with "leave to reopen if [Dunley's] sworn statement proves to be untrue", and returned it to the defense on December 30, 1989. This was unacceptable to Dunley. Exasperated, he finally moved for summary judgment on January 17, 1990. The motion included a request for attorney's fees pursuant to CR 11 and RCW 4.84.185.

DeJean filed no papers in response to the motion for summary judgment. The motion was heard on February 9, 1990. At that hearing, DeJean stated that he was not opposing the motion for summary judgment. He conceded that there had been no malpractice in the April 1986 surgery and that Dr. Dunley had not been present at the June surgeries where the alleged malpractice occurred. He insisted, however, that he was not to blame for wrongly suing Dunley. He explained that he had relied solely on the opinion of the consulting firm in bringing the suit. In support of this contention, he stated that he had a letter from the firm "out in the car" advising him to sue Dunley. He asked the court to allow him the opportunity to produce it.

He said that he had not bothered to bring any evidence on his own behalf because he "did not think they [Dunley and Dunley's attorney] would pursue it this far." The trial court agreed to postpone ruling on the motion so DeJean could have a second chance to respond.

The motion was heard again on March 16, 1990. DeJean did not produce a letter from the consulting firm. Indeed, he did not produce any additional evidence that would substantiate either his assertion that he relied on the consulting firm's advice or that it was reasonable for him to rely on that advice without more. He did, however, present his own affidavit which reiterated his previous statements to the court, as follows:

> At the time I interviewed Mr. Watson, the only dentist that he identified was Dr. Charles Maier. I had absolutely no knowledge of Dr. Robert Dunley. After the consulting firm received the records, it was their recommendation that both Dr. Maier and Dr. Dunley be named in the litigation. This was the *only* reason Dr. Dunley was named a party to the litigation.

The trial court granted Dunley's motion for summary judgment and awarded him $4,200 in attorney's fees pursuant to CR 11 and RCW 4.84.185. This award, which represented the entire amount of attorney's fees incurred by Dr. Dunley prior to the summary judgment hearing, was expressly assessed against DeJean himself and not against his client, Watson.

DeJean moved for reconsideration and another hearing was held on March 30, 1990. This time, he submitted copies of correspondence with the consulting firm showing that he had sent them Watson's records. He did not, however, submit any correspondence that showed that the firm had advised DeJean to sue Dr. Dunley, and again, DeJean produced no evidence to support the reasonableness of relying on the firm's advice. DeJean also objected to some charges by Dunley's counsel for paralegal time. The court denied the motion, stating that its previous ruling was correct and that DeJean's objections to the amount of the fees came too late. He appeals.

■ Initially, we note that while the trial court purported to sanction DeJean under both RCW 4.84.185 and CR 11, only CR 11 authorizes fees against him as a lawyer. RCW 4.84.185 allows fees against a party and DeJean is not a party. Because it is clear from the record that the court assessed Dr. Dunley's fees against DeJean himself and not against his client, RCW 4.84.185 is not applicable, and we do not consider it further. *See Cascade Brigade v. Economic Dev. Bd.*, 61 Wn. App. 615, 618, 811 P.2d 697 (1991).

CR 11 imposes three independent and affirmative duties on an attorney or party who signs a "pleading, motion, or legal memorandum." These are: (1) the duty to conduct a reasonable inquiry into the facts supporting the document; (2) the duty to conduct a reasonable inquiry into the law, such that the document embodies existing legal principles or a good faith argument for the extension, modification, or reversal of existing law; and (3) the duty not to interpose the document for purposes of delay, harassment, or increasing the costs of litigation. *Miller v. Badgley*, 51 Wn. App. 285, 300, 753 P.2d 530, *review denied*, 111 Wn.2d 1007 (1988); *Thomas v. Capitol Sec. Servs., Inc.*, 836 F.2d 866 (5th Cir. 1988) (en banc).

■ The determination of whether a violation of CR 11 has occurred is vested in the sound discretion of the trial court. *John Doe v. Spokane & Inland Empire Blood Bank*, 55 Wn. App. 106, 780 P.2d 853 (1989); *Cooper v. Viking Ventures*, 53 Wn. App. 739, 770 P.2d 659 (1989). The trial court has "tasted the flavor of the litigation and is in the best position to make these kinds of determinations." *Miller*, 51 Wn. App. at 300 (quoting *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C. Cir. 1985)). This court has uniformly adopted the abuse of discretion standard of review for CR 11 determinations. *Cascade Brigade v. Economic Dev. Bd., supra*; *Bryant v. Joseph Tree, Inc.*, 57 Wn. App. 107, 115, 791 P.2d 537 (1990); *Cooper*, 53 Wn. App. at 743. A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds. *Bryant v. Joseph Tree, Inc., supra*.

Here, it is beyond argument that DeJean had no factual or legal basis for joining Dr. Dunley in the suit against Dr. Maier. There is not a shred of evidence in the record to suggest that Dr. Dunley was present during the allegedly negligent June surgeries. Dr. Dunley's involvement in Watson's treatment consisted solely of assisting Dr. Maier in the April 1986 surgery and there is no allegation that his performance in that surgery fell below the acceptable standard of care. DeJean's bare suspicion that Dr. Dunley may have consulted with Dr. Maier about the earlier, allegedly negligent surgeries could not possibly establish the basis for a malpractice suit against Dr. Dunley.

DeJean contends, however, that he should not be subjected to CR 11 sanctions because he was merely following a consulting firm's advice when he joined Dr. Dunley in the malpractice suit against Dr. Maier. We disagree.

█ CR 11 requires an attorney to make an objectively reasonable inquiry into the facts supporting his case before he files a lawsuit. Here, not only did DeJean fail to make a reasonable investigation, he made no investigation. By his own admission, all he did was ship Watson's medical records off to a consulting firm. When the firm came up with Dr. Dunley as a new potential codefendant, DeJean did not even ask the firm to explain in what way Dr. Dunley's treatment of Watson was negligent before he headed for the courthouse. This kind of blind reliance on a consulting firm's advice did not even begin to satisfy DeJean's CR 11 obligations. *Cf. Southern Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986) ("blind reliance" on a client's assertions seldom constitutes a reasonable inquiry); *Coburn Optical Indus., Inc. v. Cilco, Inc.*, 610 F. Supp. 656, 659 (M.D. N.C. 1985) ("If all the attorney has is his client's assurance that facts exist or do not exist, when a reasonable inquiry would reveal otherwise, he has not satisfied his obligation.").

Contrary to DeJean's assertions in oral argument before this court, this is not a case where the early stages of discovery prevented him from ascertaining that there was no basis for the suit against Dr. Dunley. DeJean had all the

information he needed to figure this out from the beginning. He had all of Watson's hospital records and even a cursory examination of them would have revealed that Dr. Dunley had nothing to do with the allegedly negligent June surgeries. He also had direct access to the consulting firm and its experts. The fact is that DeJean did not even bother to investigate and analyze the information in his possession before he sued Dr. Dunley. He cannot now erase his mistake by complaining that he had not been able to complete "discovery" of the information in Dr. Dunley's possession.

■ DeJean also argues that the complexity of Watson's case should excuse his failure to discover that he had no basis for suing Dr. Dunley. However, if the facts of a case are particularly complex, this is all the more reason for counsel to carefully inquire into them before commencing legal action. *Cascade Brigade*, 61 Wn. App. at 620 n.4.

DeJean's argument that he had to act quickly because of the statute of limitations problem is meritless as well. DeJean waited 2 months after Watson first met with him before filing suit. Two months was more than enough time to discover that Dr. Dunley was not even involved with Watson's case at the time Dr. Maier allegedly committed malpractice.

DeJean's decision to sue Dr. Dunley for malpractice before he had the facts to back it up typifies the "shoot-first-and-ask-questions-later" approach to the practice of law that CR 11 was intended to inhibit. *Cascade Brigade*, 61 Wn. App. at 624 (citing Fed. R. Civ. P. 11 advisory committee note (1983 amendment)). Following that approach, DeJean has subjected the parties and the court system to needless costs and aggravation. The trial court did not abuse its discretion in awarding CR 11 fees against him.

■ Once a CR 11 violation has occurred, the court must impose appropriate sanctions. CR 11; *Cascade Brigade*, 61 Wn. App. at 619; *Miller*, 51 Wn. App. at 300. The trial court retains broad discretion as to the nature and scope of the award, which can include the full amount of attorney's fees. *Cascade Brigade v. Economic Dev. Bd.*, *supra*. We do not

believe the court abused its discretion in awarding Dr. Dunley $4,200 in fees and costs.

■ DeJean contends that "the fee award contains improper items." However, he does not identify these "improper items", makes no argument, and cites no authority in his brief to support his contention. We therefore have no basis on which to consider this contention. Assignments of error lacking argument or citation to authority will not be considered by the courts of appeals. *E.g., Carrigan v. California Horse Racing Bd.*, 60 Wn. App. 79, 802 P.2d 813 (1990), *review denied*, 117 Wn.2d 1002 (1991); *In re Marriage of Sanborn*, 55 Wn. App. 124, 777 P.2d 4 (1987).

DeJean also contends that he was denied procedural due process in the hearings below. He asserts that he should have been allowed to make discovery, present testimony and cross-examine witnesses, and even suggests that he had a right to a jury trial. We disagree.

■ The United States Supreme Court has pointed out that when evaluating what process is due, there comes a point when the benefit of an additional safeguard may be outweighed by its costs. *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). To impose here the procedural safeguards that DeJean suggests would create just such a situation.

■ The major goal of CR 11 is to rid the courts of meritless litigation and thereby reduce the growing cost and attendant burden of civil litigation. It would be counterproductive if the rule itself were to cause an increase in unnecessary litigation by mandating extensive collateral procedures as a prerequisite for CR 11 sanctions. *Donaldson v. Clark*, 819 F.2d 1551 (11th Cir. 1987). The federal advisory committee notes to Fed. R. Civ. P. 11 plainly state that for this reason, satellite litigation is to be avoided.

■ We believe the comment to the federal rule is sound. Discovery should be allowed only in extraordinary circumstances. *Donaldson*, 819 F.2d at 1556; 2A J. Moore, *Federal Practice* ¶ 11.02[4], at 11-26, 11-27 (2d ed. 1987). There is also no entitlement to a jury trial on CR 11 allega-

tion of attorney misconduct, even though a factual determination is involved. *See In re Itel Sec. Litig.*, 596 F. Supp. 226, 232 n.7 (N.D. Cal. 1984), *aff'd*, 791 F.2d 672 (9th Cir. 1986). While it is fundamental that due process requires notice and opportunity to be heard, *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 L. Ed. 865, 70 S. Ct. 652, 657 (1950), this does not necessarily mean that an attorney is entitled to a full evidentiary hearing on CR 11 sanctions. Generally, the court should limit the scope of the sanction proceedings to the record. *See, e.g., Delaney v. EPA*, 898 F.2d 687 (9th Cir. 1990); *Donaldson v. Clark, supra; Oliveri v. Thompson*, 803 F.2d 1265, 1280 (2d Cir. 1986); *Brown v. National Bd. of Med. Examiners*, 800 F.2d 168 (7th Cir. 1986).

Whether and to what extent an additional hearing is required will vary depending upon the nature of the case. The federal advisory committee note indicates some factors to be considered: (1) the circumstances in general; (2) the type and severity of the sanction under consideration; (3) the judge's knowledge of the facts and whether there is need for further inquiry. The note observes further that "in many situations, the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary."[3]

Here, DeJean's procedural rights were not violated. On the contrary, he was warned time and again that Dr. Dunley would seek CR 11 sanctions if he persisted in this frivolous lawsuit. He had not one, not two, but three opportunities to be heard. When he failed to bring any evidence with him to the February 9, 1990, hearing, the trial court put the matter over until March 13, 1990, to give him a second chance. Still, he failed to present any evidence on his

---

[3]Assertions of CR 11 violations are often made, as they were here, in connection with a CR 12(b)(6) motion to dismiss or a CR 56 motion for summary judgment. The trial court is usually able to evaluate the CR 11 issue in the course of examining and ruling on the merits of the motion. However, the potential target of the sanction must have notice that sanctions are contemplated and of what his or her alleged deficiency is, and have a reasonable opportunity to contest and explain.

own behalf. On the March 30, 1990, motion for reconsideration, he again failed to bring any evidence that might show he had been reasonable in relying on the consulting firm's advice. His procedural rights were not violated.

Dr. Dunley asks for attorney's fees on appeal in accordance with RAP 18.1. He contends that sanctions are proper under RAP 18.7 and 18.9(a). We agree.

■ RAP 18.9(a) authorizes the appellate court to order sanctions against an attorney who brings an appeal for the purpose of delay. In determining whether an appeal is brought for delay under RAP 18.9(a), "our primary inquiry is whether, when considering the record as a whole, it presents no debatable issues and is so devoid of merit there is no reasonable possibility of reversal." *Streater v. White*, 26 Wn. App. 430, 434, 613 P.2d 187, *review denied*, 94 Wn.2d 1014 (1980).

Given the egregious facts here, we find nothing debatable in the appeal. DeJean appears to be using the appellate process solely as a means to delay the inevitable. He submitted two briefs which attempted to introduce matters outside the record for which successful motions to strike were brought, and he continues to set forth the same arguments that the trial court found three times were meritless. This type of misuse of the system should be discouraged.

We award reasonable fees on appeal, to be determined by a commissioner of this court upon compliance with RAP 18.1. The trial court's award of $4,200 CR 11 sanctions against DeJean is affirmed.

PETRICH, C.J., and PEARSON, J. Pro Tem., concur.

Reconsideration denied May 29, 1992.

Review denied at 120 Wn.2d 1015 (1992).