IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| BRIAN and KAREN HANDLIN, | ) | No. 76146-3-I |
| Respondents, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| ON-SITE MANAGER, INC. | ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: April 23, 2018 |
| | ) | |

BECKER, J. — In this appeal, we review an order granting summary judgment to plaintiffs on four alleged violations of the Washington Fair Credit Reporting Act. When plaintiffs were trying to rent an apartment, the defendant company provided information about them to a landlord. The plaintiffs sued to obtain disclosure of the information. The trial court found that the company failed to make certain statutorily required disclosures. We reverse two violations and affirm two violations.

This court will affirm summary judgment if no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law. Mountain Park Homeowners Ass'n v. Tydings, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). All facts and reasonable inferences are considered in the light

most favorable to the nonmoving party, and all questions of law are reviewed de novo. Mountain Park, 125 Wn.2d at 341.

On August 5, 2013, respondents Brian and Karen Handlin submitted a rental application to Forestview Apartments in Renton. Appellant On-Site Manager is Forestview's tenant screening company. On-Site screens tenants according to the criteria furnished by the prospective landlord. Forestview submitted the application to On-Site through a web portal and got back in return a "Rental Report." The rental report, a copy of which the Handlins later obtained through discovery from Forestview, included a chart of categories that could be checked "Pass" or "Fail," a "Score" of 4.5 out of 10, and an "Overall Recommendation" to decline the application. Forestview declined the application and informed Karen Handlin she could obtain information about the reasons by contacting appellant On-Site.

Karen declares that she called On-Site and was told that the application was denied because the Handlins had been "'evicted.'" Karen replied that was inaccurate:

> I replied that we had not been evicted, and the On-Site representative stated that her computer showed we had been. I stated that we had settled the case out of court and had not been evicted and that I had court documents to support that. The On-Site representative stated that On-Site would "look at" documents if I submitted them.

Karen took her documents about the settlement to Forestview. These documents reflect that the Handlins were involved in a sale and leaseback transaction described by their attorney as a "complex real estate scam." The other party sued the Handlins for unlawful detainer. The Handlins countersued

for quiet title. The consolidated matters were removed to federal court and were settled in 2010. The record of the unlawful detainer action in King County Superior Court had previously caused problems for the Handlins in obtaining rental housing.[1]

On August 7, 2013, the Forestview assistant manager, Shaki McHayle, faxed the documents to On-Site and requested that On-Site update the Handlins' file "as necessary." On-Site's notes indicate that on August 9, an On-Site representative reviewed the documents and "updated the report" and then advised Forestview that the update did not change the recommendation to decline the application.

On August 16, 2013, an attorney representing the Handlins wrote to On-Site requesting copies of "any and all consumer reports you made to Forestview Apartments regarding the Handlins, all information in your file regarding the Handlins as of the time of this request, and the sources of all such information" as well as their "credit score" and how it was calculated. Having received no response, the attorney wrote again on August 26, 2013, repeating the request. A copy of the "credit report" was sent to the attorney; On-Site's notes indicate that it was sent on August 27. The report did not mention the pass/fail chart, the rental score of 4.5 or the recommendation to Forestview that the application be declined.

The Handlins eventually rented an apartment at a different complex, but they were concerned about their credit information being inaccurate, and they

---

[1] Clerk's Papers at 180-84.

3

believed they had not received a full disclosure from On-Site. The Handlins filed suit against On-Site, alleging violations of the Washington Fair Credit Reporting Act, chapter 19.182 RCW. On-Site successfully moved to dismiss under CR 12(b)(6) for failure to state a claim. The Handlins appealed. This court reversed. Handlin v. On-Site Manager, Inc., 187 Wn. App. 841, 844, 351 P.3d 226 (2015).

On remand, the Handlins moved for summary judgment. The trial court found that On-Site had committed four of the alleged violations, three of them willfully. "Where there has been willful failure to comply with any requirement imposed [by the Washington Fair Credit Reporting Act], the consumer shall be awarded actual damages, a monetary penalty of one thousand dollars, and the costs of the action together with reasonable attorneys' fees." RCW 19.182.150. The court imposed statutory damages of $1,000 for each willful violation, totaling $6,000 (three violations against Karen and three against Brian). The court awarded attorney fees and granted an injunction ordering On-Site to cease and desist from further violations of the same type. On-Site appeals.

Injury

On-Site argues that the Handlins did not establish "Article III standing" because they did not demonstrate "injury in fact." This issue was decided against On-Site in the previous appeal. The Handlins are in state court, so they are not required to show standing under article III of the United States Constitution. They have asserted an injury to property, an element necessary to prove a violation of Washington's Fair Credit Reporting Act as a consumer

protection violation. "An injury to property occurs when one's right to possess, use, or enjoy a determinate thing has been affected in the slightest degree." Handlin, 187 Wn. App. at 849.

The consumer disclosures mandated by the Fair Credit Reporting Act are a form of property. Handlin, 187 Wn. App. at 850. The Handlins can establish "injury" to "property" by proving they were denied their right to obtain information that has commercial utility for them, such as information in the agency's file or the identity of the source of the information. Handlin, 187 Wn. App. at 851. A failure of such proof would mean a failure to prevail in the lawsuit, not a lack of standing to bring it.

<u>Rental Score and Recommendation</u>

If requested by a consumer, a consumer reporting agency must provide all information "in the file on the consumer at the time of request":

> A consumer reporting agency shall, upon request by the consumer, clearly and accurately disclose:
> (1) All information in the file on the consumer at the time of request, except that medical information may be withheld. . . .
> (2) All items of information in its files on that consumer, including disclosure of the sources of the information, except that sources of information acquired solely for use in an investigative report may only be disclosed to a plaintiff under appropriate discovery procedures.

RCW 19.182.070. "The Fair Credit Reporting Act is designed to benefit consumers by giving them the same right of access to their credit information as is available to landlords, employers, or others who are evaluating their creditworthiness." Handlin, 187 Wn. App. at 850.

5

The trial court concluded that On-Site willfully violated RCW 19.182.070(1) by failing to "disclose the Handlins' rental scores, recommendations, or related information (such as the pass/fail chart), even though the information was recorded and retained by On-Site and in its files." On-Site contends there is a factual issue as to whether On-Site had in its "file" the "Rental Report" that Forestview received through On-Site's web portal—the report that gave the Handlins a score of 4.5 out of 10 and recommended that their rental application be declined.

A consumer reporting agency's file is defined as "all of the information on that consumer recorded and retained by a consumer reporting agency regardless of how the information is stored." RCW 19.182.010(9). According to On-Site, the rental report and recommendation was not retained by On-Site; rather, it was generated by Forestview for its own use by using On-Site's software to apply Forestview's own criteria to the credit information in the On-Site database.

The record does not rule out the possibility that On-Site actually did have in its file the rental score and recommendation prepared for Forestview. A document created for On-Site at the time of Karen Handlin's inquiry indicates that the representative who took her call had a copy of a report that stated the "Starting Report Score" was 4.5. There is evidence that on August 9, 2013, an On-Site representative reviewed the settlement documents provided by Karen Handlin and "updated the report." Her notes state that she then advised Forestview that the update did not change the "Decline" recommendation. One might infer the existence of an accessible file in which On-Site saved or stored

6

that scoring information because otherwise how did the On-Site representative know that the update did not change the recommendation?

But the record also contains evidence supporting On-Site's position. On-Site had an agreement to supply Forestview with a customized rental score and recommendation. According to On-Site's witnesses, On-Site does not save or store these items of information.[2] The Handlins' 4.5/10 score supplied to Forestview was generated by On-Site's algorithm. The algorithm is described as "essentially a calculator" where landlords "can configure different variables that are meaningful or less meaningful to them." The calculator provides the landlord with the score utilizing the landlord's own settings. The landlord's screening criteria are stored in "the cloud," but they are password-protected. On-Site employees do not have the landlord's password and thus do not have access to the settings.[3] According to On-Site, this is why Forestview was able to generate the rental report, but On-Site was not.

The Handlins contend it is immaterial whether On-Site employees have the landlord's password. They contend information is in a credit reporting agency's "file" if it appears in a report on an individual consumer, regardless of where the data is physically stored. They argue that the agency violates the law if it creates a system that can analyze the underlying credit data and format it into a customized report for a client like Forestview, yet cannot supply the same report to the consumer. They cite Cortez v. Trans Union, LLC, 617 F.3d 688,

---

[2] Clerk's Papers at 980-82.
[3] Clerk's Papers at 991-92.

7

711 (3d Cir. 2010). In that case, a credit agency purchased credit information from a third-party vendor. The information included special messages indicating that the plaintiff's name matched one on a terrorist watch list. The plaintiff was not a terrorist. She won an award of damages against the credit agency for the failure to respond to her request to correct her credit report. Cortez, 617 F.3d at 703-04. The credit agency argued on appeal that there was no violation because the terrorist alert information was not a part of the credit agency's files. The court rejected this argument. Credit reporting companies cannot escape the disclosure requirement in the federal statute "by simply contracting with a third party to store and maintain information that would otherwise clearly be part of the consumer's file and is included in a credit report." Cortez, 617 F.3d at 711.

On-Site did disclose to the Handlins the underlying credit information it had purchased from third party vendors, including an "eviction data vendor." Arguably, this satisfied the statutory requirement at issue. The rental score and recommendation generated by Forestview using its own criteria is not directly analogous to the third party vendor data considered in Cortez. The factual record is not developed well enough to support a conclusion that the rental score and recommendation were in an On-Site "file" merely because they appeared in the report generated by Forestview's inquiry. We conclude there is a genuine issue of material fact as to whether the rental score, pass/fail chart and recommendation were in On-Site's file at the time of the request for disclosure. This violation, along with the corresponding statutory damages and injunctive relief, is reversed and remanded for further proceedings.

Inclusion of Washington Specific Disclaimer of Rights

When a consumer reporting agency makes disclosures to a consumer, it is required to include a written summary of all rights and remedies the consumer has under the Washington Fair Credit Reporting Act. RCW 19.182.080(7). The Handlins claim they proved beyond dispute that On-Site's August 27, 2013, disclosure to the Handlins did not include such a summary; On-Site disputes this claim. The trial court sided with the Handlins and found On-Site committed another willful violation of the act by failing to include the mandatory Washington summary.

Through discovery, the Handlins obtained On-Site's admission that it mailed documents labeled as "Exhibit 2" to the Handlins' attorney on August 27, 2013. Exhibit 2 does not include the summary of rights and remedies mandated by Washington law. On-Site's admission establishes that On-Site mailed the documents in exhibit 2, but that is not proof that On-Site did not also mail the Washington summary. Testimonial evidence submitted by On-Site tends to prove that the Washington summary was automatically included with disclosures as a matter of course. Because a genuine issue of material fact remains as to whether On-Site violated RCW 19.182.080(7), this violation and injunctive relief corresponding to it must be reversed.

Failure To Provide Post-Reinvestigation Disclosures

If a consumer disputes the completeness or accuracy of information in the consumer's file at a consumer reporting agency and notifies the agency directly of "the dispute," the agency must "reinvestigate without charge and record the

current status of the disputed information" within 30 days. RCW 19.182.090(1). Upon completion of the reinvestigation, the agency shall notify the consumer of the results within 5 business days. RCW 19.182.090(8)(a).

Karen Handlin called On-Site on August 5, 2013, to find out what credit information on file with On-Site had caused Forestview to deny the rental application. On-Site reviewed the settlement documents and then updated the credit report so that the unlawful detainer action was shown as "dismissed." But On-Site did not send the Handlins notice of the results of its investigation.

The trial court found that On-Site willfully violated RCW 19.182.090(8)(a) by failing to make the required post-investigation disclosure.

A post-investigation disclosure is required only if the consumer notifies the agency directly of a "dispute." RCW 19.182.090(1). On-Site claims Karen Handlin's call to On-Site on August 5, 2013, did not constitute notification of a dispute. This argument is without merit. On-Site's representative said the Handlins' application to Forestview was denied because they had been evicted. Karen Handlin disputed this information.

On-Site argues that if a violation of RCW 19.182.090(8)(a) occurred, it was not willful. But On-Site has not offered a reasonable excuse for its failure to a provide post-reinvestigation notice. On-Site's own policy as stated by the company's director of screening data is "by and large, if someone's calling in to Renter Relations and . . . thinks something should be amended on the report and wants us to look into something, we're going to treat it as a dispute." We conclude the company "ran a risk of violating the law substantially greater than

10

the risk associated with a reading that was merely careless." <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47, 69, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007).

On-Site argues that Brian Handlin was not entitled to statutory damages for this violation because only Karen Handlin called On-Site to dispute the rental report. This argument was not raised below. In any event, the information disputed by Karen Handlin was in a joint report for both her and her husband.

We affirm this finding of violation, along with the statutory damages associated with it.

<u>Sources of Information</u>

Upon request, the consumer reporting agency must disclose all items of information in its files on that consumer, "including disclosure of the sources of the information." RCW 19.182.070(2).

The disclosure made by On-Site on August 27, 2013, included a copy of the updated screening report. Under the heading "Landlord Tenant Court Records" is a reference to "SEATTLE-SUP.CT" and a case number. On-Site obtained the information from an "eviction data vendor" such as LexisNexis, not directly from superior court. Because the disclosure did not specify the vendor that was On-Site's source of the information, the trial court concluded that On-Site willfully violated its duty to disclose the sources of its information.

On-Site contends its duty to disclose was satisfied by listing the superior court as the original source of the unlawful detainer information. But because the disclosure did not identify the vendor that compiled the court records, the court properly concluded that the disclosure was incomplete. It left the Handlins

unable to prevent future adverse actions prompted by misinformation from that vendor. While the superior court may be the original source of court records, listing only the superior court does not satisfy the statutory requirement to disclose the "sources" of information.

On-Site argues the court erred by finding the violation to be willful because it was reasonable to designate the superior court as the "source." On-Site designated the information as coming "From On-Site.com," not from the superior court, further obscuring the source of the information. And in any event, it is unreasonable to read the statute in a way that would excuse On-Site from listing the "eviction data vendor" as the source from which On-Site obtained its information about landlord tenant court records.

We affirm this finding of a willful violation, along with the statutory damages associated with it.

Injunctive Relief

The trial court entered injunctive relief ordering On-Site to cease and desist from further violations of the act. On-Site contends the court abused its discretion.

With respect to the two violations that we affirm in this opinion, the order prohibits On-Site from failing to disclose the true sources of information in its consumer reports and from failing to make the post-reinvestigation disclosures as required by the statute. On-Site's challenge to the court's authority to order such relief was rejected in our opinion in the previous appeal. Handlin, 187 Wn. App. at 850-51. We adhere to that opinion.

12

CR 11 Sanctions and Motion To Quash

As discussed above, the parties disputed whether the disclosures On-Site provided by mail to the Handlins' attorney on August 27, 2013, included the statutorily required summary of Washington State rights and remedies. In depositions, the Handlins stated that they had never seen the August 27 disclosures. On-Site's attorney asked them if they had been told the disclosures did not include the Washington summary. Dunn objected on the grounds of attorney client privilege and instructed the Handlins not to answer. On-Site subpoenaed the Handlins' attorney, Eric Dunn, to question him on this topic. The trial court granted the Handlin's motion to quash the subpoena and imposed CR 11 sanctions against On-Site totaling $2,405.

On-Site appeals these rulings. This court reviews both CR 11 sanctions and discovery orders for abuse of discretion. Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994); Miller v. Kenny, 180 Wn. App. 772, 809, 325 P.3d 278 (2014).

Circumstances in which a trial court should order the taking of opposing counsel's deposition are rare. Miller, 180 Wn. App. at 808. A leading federal case states they are limited to instances where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel, (2) the information sought is relevant and nonprivileged, and (3) the information is crucial to the preparation of the case. Shelton v. Am. Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).

Two witnesses testified that a Washington summary was included with disclosures as a matter of course. But there is no indication that On-Site sought information on this topic from Margaret Carter or Tanya Biener, the On-Site employees who were responsible for physically mailing the disclosures to Dunn. Because On-Site did not exhaust other potential sources of information prior to subpoenaing Dunn, it was not an abuse of discretion for the trial court to quash the subpoena.

But the fact that the trial court was within its discretion to quash the subpoena does not necessarily mean that the court was within its discretion to impose CR 11 sanctions against On-Site. "Three conditions must be met before an attorney can be subjected to CR 11 sanctions: (1) the pleading, motion, or memorandum must not be well grounded in fact; (2) it must not be well grounded in law; and (3) viewed objectively, the attorney must have failed to make a reasonable inquiry into the factual or legal basis of the action." Brigade v. Econ. Dev. Bd., 61 Wn. App. 615, 619, 811 P.2d 697 (1991).

Dunn was the recipient of the letter in question. His clients had not seen it. On-Site may have failed to explore other sources of information about whether the Washington summary was included with the letter, but objectively, On-Site's limited inquiry was not unreasonable under the circumstances. The sanctions are reversed.

Other Matters

On-Site asks that we order the case to be assigned to a different judge on remand. This request is denied. On-Site's allegations demonstrate that On-Site

and the trial court had a number of disagreements, but they do not rise to the level of actual or potential bias. See State v. Finch, 181 Wn. App. 387, 398-99, 326 P.3d 148 (2014).

Both parties request an award of attorney fees on appeal under RAP 18.1. RAP 18.1 requires more than a bald request for attorney fees. Phillips Bldg. Co. v. An, 81 Wn. App. 696, 915 P.2d 1146 (1996). Neither party has stated the applicable law that would support an award of attorney fees. Both parties have prevailed on significant issues. We make no award of fees on appeal.

Affirmed in part, reversed in part.

Becker, J.

WE CONCUR:

Trickey, J.