IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JAMES W. and JUDY D. AASEBY, husband and wife, | ) ) ) | No. 30093-5-III |
| Respondents and Cross-Appellants, | ) ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| WILLIAM VUE, a single person; and VILAY and AGNES VUE, husband and wife, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| J. SCOTT MILLER, | ) ) | |
| Appellant. | ) | |

KULIK, J. — William Vue was involved in a car accident with James W. Aaseby

and Judy Aaseby in 2000. The Aasebys initiated a personal injury action against Mr. Vue.

Attorney J. Scott Miller was retained by Allstate Insurance Company to represent Mr.

Vue. After the case was settled for Allstate's policy limits in 2004, the Aasebys identified

a Farmers Insurance policy that was not provided during discovery and other factual

discrepancies. The Aasebys moved for sanctions against Mr. Miller under CR 11(a) and

CR 26(g). Extensive and protracted litigation ensued. In 2011, the Spokane County Superior Court imposed sanctions on Mr. Miller in the amount of $22,300 for failing to exercise diligence in answering the complaint and the discovery request. Mr. Miller appeals the imposition of sanctions. The Aasebys cross appeal the amount of the sanctions and the denial of sanctions against Mr. Miller's firm.

We reverse the sanctions imposed on Mr. Miller, affirm the trial court's dismissal of Mr. Miller's law firm, deny attorney fees on appeal, and remand solely for the trial court to deny the Aasebys' cross motion for sanctions.

## FACTS

The underlying litigation that gave rise to the sanctions involved a motor vehicle accident. On October 20, 2000, 18-year-old Mr. Vue pulled out in front of a vehicle driven by Mr. Aaseby, causing a collision. Both cars were totaled. Mr. Aaseby and his wife, Judy Aaseby, were injured in the collision. Mr. Vue was at fault.

At the scene of the accident, Mr. Vue provided Mr. Aaseby information about a Farmers Insurance policy. Mr. Aaseby's notes taken at the scene include the names of Cheu and Pai Vue,[1] Mr. Vue's address, and a Farmers policy number. Later that day, Mr. Aaseby contacted Farmers and provided the policy number he received at the scene.

---

[1] For clarity, members of the Vue family will be referenced by their first names,

Farmers issued a claim number to Mr. Aaseby. Ultimately, Mr. Aaseby determined that Farmers did not provide coverage. Instead, he was informed that Allstate insured the car Mr. Vue was driving.

In 2003, the Aasebys retained attorney Michael J. Delay and initiated a personal injury claim against Mr. Vue. The complaint also named Vilay and Agnes Vue as defendants. The complaint alleged that Vilay and Agnes were the natural parents of Mr. Vue, and husband and wife. The complaint also alleged that Vilay and Agnes were the registered owners of Mr. Vue's car.

Allstate, who was Vilay's insurer, retained Mr. Miller and his law firm of Miller, Devlin, McLean, & Weaver, P.S. to represent Mr. Vue, Vilay, and Agnes. The file provided to Mr. Miller by Allstate indicated that the car driven by Mr. Vue was owned by and registered to his parents, Vilay and Agnes.

Soon after Mr. Miller was retained, he sent a letter to the defendants requesting that they contact him. Mr. Vue called Mr. Miller and confirmed that he had been driving the car with Vilay's permission. However, he did not inform Mr. Miller that some of the allegations in the complaint were inaccurate. Specifically, he did not advise Mr. Miller

---

with the exception of William Vue.

that Vilay and Agnes were his siblings, that his parents were Cheu and Pai, and that Cheu was the registered owner of the car.

Mr. Miller filed an answer to the complaint, admitting that Vilay and Agnes were the married parents of Mr. Vue and that the two were the registered owners of the car driven by Mr. Vue. Neither Mr. Vue nor Allstate indicated that there was a Farmers Insurance policy issued to anyone in the Vue family.

The Aasebys served the defendants with a set of interrogatories and requests for production. In turn, Mr. Miller sent the discovery request to Mr. Vue, Agnes, and Vilay at their shared home. Mr. Miller requested that they answer all of the questions to the best of their ability. Mr. Miller informed Mr. Vue that the questions stamped "Attorney will Answer" would be filled out by his office, but that if Mr. Vue could answer any of these questions in whole or part, he should do so. Clerk's Papers (CP) at 231.

A paralegal in Mr. Miller's office met with Mr. Vue to draft responses. Of importance here are three requests and responses. First, interrogatory 14 asked Mr. Vue to identify any insurance or indemnification agreements or policies that may satisfy part or all of a judgment. The answer provided to the Aasebys identified only the Allstate policy. Second, the corresponding request for production asked Mr. Vue to produce any other documents affecting insurance coverage, such as documentation denying coverage,

4

for the defendant or covered person. The answer to this request was "none." CP at 1437.

Last, interrogatory 35 asked Mr. Vue to identify the registered owner of the vehicle that he was driving at the time of the collision. The answer stated "Vilay Vue." CP at 1451.

During this meeting, Mr. Vue also corrected the caption of the case, indicating that Vilay was his brother and Agnes was his sister. He also noted on the caption that Vilay owned the car.

Mr. Vue was asked to review the answers. In a declaration submitted around two years later, Mr. Vue noted that the answers reflected that Allstate was the only insurance providing potential indemnification in the case and, at the time, he believed that this information regarding insurance was correct.[2] He also believed that Vilay was the registered owner of the car. Mr. Vue signed the verification page of the discovery request, stating that he read the responses and believed them to be true and correct.

A new associate in Mr. Miller's firm, Crystal Spielman, signed and certified the answers pursuant to CR 26. At the time of certification, Ms. Spielman had been in practice for about six weeks. The final answers provided to the Aasebys generally mirrored the answers drafted in the meeting with Mr. Vue. However, the caption of the

---

[2] In a subsequent declaration, Mr. Vue claimed that he did not provide any information regarding insurance coverage at the meeting and that he did not have an opportunity to review the final answers to the interrogatories.

5

case was not corrected. Nor did Mr. Miller notify the Aasebys that Vilay and Agnes were Mr. Vue's siblings.

The only other discovery conducted for this action was Mr. Vue's deposition of Mr. Aaseby. The Aasebys did not depose any of the defendants.

In June 2004, the case was settled for Allstate's policy limits of $25,000. The Aasebys released the defendants from liability and dismissed their claim with prejudice.

The Aasebys subsequently pursued a claim for underinsured motorists insurance and personal injury protection coverage under their own policy held by Grange Insurance. The Aasebys received the policy limits of $100,000.

During Grange's investigation of the Aasebys' claim, Grange identified the Farmers liability policy for Mr. Vue and the claim number assigned to Mr. Aaseby. Grange notified the Aasebys that Mr. Vue may have had his own insurance policy in addition to the Allstate policy. Mr. Delay, the Aasebys' counsel, informed Grange that his investigation verified that no other policy existed, and that this information could be verified through Mr. Miller and Allstate.

Around this same time, Farmers contacted Mr. Vue. Mr. Vue e-mailed Mr. Miller about the coverage, telling Mr. Miller that he was unsure if he had two policies. Mr. Miller did not contact the Aasebys about the Farmers policy.

6

In June 2005, the Aasebys contacted Mr. Miller about the Farmers policy. The Aasebys requested that Mr. Miller open a claim with Farmers. Mr. Miller notified the Aasebys that he no longer represented Mr. Vue and that he forwarded the Aasebys' letter to Mr. Vue. Mr. Miller filed his notice of intent to withdraw as Mr. Vue's counsel.

Patrick McMahon of Carlson, McMahon & Sealby, PLLC, filed a notice of substitution of attorney for Mr. Vue. Mr. McMahon sent a letter to the Aasebys that clarified that Vilay and Agnes were Mr. Vue's siblings. Mr. McMahon also stated that Vilay owned and insured the car. Sometime before September 2005, the Aasebys became aware that Cheu and Pai were Mr. Vue's parents and that the car was registered to Cheu.

The Aasebys moved to set aside the stipulation and order of dismissal with prejudice. The Aasebys also requested attorney fees and costs. The trial court granted the motion and vacated the order of dismissal. The court reserved the ruling on attorney fees.

In December 2005, the Aasebys filed another motion for attorney fees, citing rules CR 26(g) and CR 11(a). They contended that attorney fees were appropriate because Mr. Vue and Mr. Miller failed to disclose the Farmers policy or supplement the record with the policy during discovery, and that Mr. Vue's and Mr. Miller's willful actions constituted bad faith and a complete disregard for court rules. Mr. Miller was not served with this motion for sanctions or given notice of the upcoming hearing.

7

A hearing was held, with Judge Robert Austin presiding. Mr. Miller was not present. In February 2006, Judge Austin issued a letter addressing the Aasebys' motion for sanctions. The court found that Mr. Miller, Ms. Spielman, and Mr. Vue violated CR 11 and CR 26(g) by failing to make a reasonable inquiry and discover the obvious falsehoods in the answer and interrogatories. The court concluded that sanctions were appropriate against all three individuals.[3] The court requested that the parties prepare findings of fact and conclusions of law for its signature. Mr. Miller was not served with the court's letter opinion.

On June 23, 2006, a presentment hearing occurred. Mr. Miller was given notice and made his first appearance in the trial court on the issue of sanctions. He argued to the trial court that his answer to the complaint was reasonable, based on the information provided by Mr. Vue. He also informed the court that the Aasebys had knowledge of the policy from the beginning. He explained that he was not told of the Farmers policy when he answered the interrogatories, but had he been aware that there was another policy, he would have addressed the issue. He subsequently became aware of the policy only during Mr. Aaseby's deposition when Mr. Aaseby stated that the policy did not apply. As for the

---

[3] Sanctions against Ms. Spielman and Mr. Vue were eventually dismissed.

8

misidentification of parties, Mr. Miller contended that he had no information to the contrary until after the case was dismissed.

At the end of the hearing, the trial court declined to sign the findings submitted by the Aasebys and decided to review the issue further. Judge Austin stated, "Just factually there's enough in here, that I'd like to review this and write another memo. I'm not going to sign findings today. I know this is really a presentment. I'm not sure even findings are a way to go. There are things in [the Aasebys'] findings that I'm not sure I found." CP at 713.

In August 2006, the trial court determined that the resolution of all the issues of the case depended on whether the Farmers policy covered Mr. Vue. The court stated, "[I]f there is coverage, then all these other issues fall into place. If there isn't coverage, then I think the matter is pretty much at an end." CP at 169. The trial court stayed the case until the Farmers issue was resolved.

For the next few years, Farmers and the Aasebys litigated the coverage issue. In June 2007, the trial court concluded that the Farmers liability policy did not cover Mr. Vue at the time of the accident. The decision was upheld on appeal in 2009. *Farmers Ins. Co. v. Vue*, noted at 151 Wn. App. 1005, 2009 WL 1941991.

Meanwhile, while *Farmers Ins. Co. v. Vue* was pending, Judge Austin retired. Judge Linda Tompkins was assigned to preside over the Aasebys' action against Mr. Vue.

The Aasebys' request for sanctions resurfaced in March 2011. The Aasebys filed a motion for CR 11(a) and CR 26(g) sanctions based on Judge Austin's February 2006 letter opinion and based on the Aasebys' June 2006 proposed findings of fact and conclusions of law. Judge Tompkins affirmed. A reasonableness hearing was set to determine the amount of the sanctions.

Mr. Delay filed a billing statement for fees incurred to litigate the Aasebys' claim. Mr. Delay's billing statement included costs from 2003 to 2007, and 2011. Mr. Delay declared that the fees were incurred as a direct result of Mr. Vue's and Mr. Miller's misconduct and violation of the court rules. Mr. Delay also declared that no litigation would have been necessary to obtain the Allstate policy limit for Vilay if Mr. Vue and Mr. Miller had told the truth.

At the reasonableness hearing, the trial court ordered sanctions against Mr. Miller under CR 11 and CR 26 for failure to investigate. Judge Tompkins accepted and signed extensive findings of fact and conclusions of law presented by the Aasebys. While the findings memorialized Judge Austin's February 2006 letter decision, the findings did not include Judge Austin's June 2006 oral decision in which he refused to sign the Aasebys'

proposed findings and refused to impose sanctions. The findings also did not incorporate Judge's Austin's August 2006 determination that the appropriateness of sanctions depended on whether Farmers coverage existed.

The parties appeared for presentment of judgment. The Aasebys included Mr. Miller's current law firm of J. Scott Miller, PLLC in the judgment. Mr. Miller argued to remove his current law firm from the judgment because the firm was not in existence at the time the sanctionable conduct took place and the firm did not participate in the sanctionable conduct. The trial court agreed and removed the law firm of J. Scott Miller, PLLC from the judgment. The trial court entered the judgment against Mr. Miller in the amount of $46,285.27 to be awarded to Mr. Delay.

Mr. Miller filed a motion for reconsideration. Mr. Miller contended that the Aasebys misrepresented Judge Austin's ruling on sanctions. At the motion hearing, the trial court ordered a transcription of the June 2006 hearing to determine the scope of Judge Austin's prior ruling.

After reviewing the transcript, Judge Tompkins issued a letter in which she recognized Judge Austin's refusal to sign the findings and his intention to review the arguments and write another memo. Judge Tompkins stated in part that "[t]his transcript casts doubt on the finality of the two earlier written memo decisions of Judge Austin

11

which have been the foundation for the court's rulings to date. It also underscores the importance of the question of whether the sanctions issue is or is not necessarily linked to the dismissal vacation/liability issues." CP at 727. Judge Tompkins requested additional briefing.

Another hearing was held, and the trial court entered new findings of fact and conclusions of law. The court concluded that Mr. Miller's lack of diligence in the answer and discovery responses and withdrawal from the case warranted sanctions. However, the court also concluded that Mr. Delay was in a position to investigate further the initial information about Farmers insurance prior to the settlement, and could have cleared up any ambiguity through further detailed discovery. Additionally, the court concluded that Mr. Delay needlessly protracted a just determination of sanctions by failing to advise the court that Judge Austin declined to enter the Aasebys' findings and conclusions. Ultimately, the court ordered sanctions against Mr. Miller in the amount of $22,550 for attorney fees and costs up to the July 1, 2005 hearing.

Mr. Miller filed a second motion for reconsideration, this time contesting the amount of the sanctions. Mr. Miller contended that the award of sanctions was not supported by Mr. Delay's cost bill. In response, the trial court revised the findings and

conclusions. Based on Mr. Delay's declaration of costs dated May 20, 2011, the court reduced the reasonable attorney fees to $22,300.

In March 2012, the Aasebys filed a motion requesting that the court compel Mr. Miller to post a supersedeas bond in the amount of $65,000 pending the appeal of the judgment. Mr. Miller opposed the motion. Mr. Miller contended that there is no legitimate basis in law for a trial court to demand a supersedeas bond to be filed. Mr. Miller requested CR 11 sanctions against the Aasebys for filing a frivolous and unsupportable motion. The Aasebys filed a cross motion for sanctions.

The next day, Mr. Miller paid the judgment and applicable interest. The court denied the Aasebys' motion to compel a supersedeas bond. The trial court reserved the issue on the attorney fees pending a decision on appeal.

Mr. Miller appeals the imposition and the amount of sanctions. The Aasebys cross appeal the trial court's decision to reduce the fees and to remove the law firm of J. Scott Miller, PLLC from the judgment. The Aasebys also cross appeal the court's denial of their request for attorney fees from their supersedeas motion.

## ANALYSIS

*Discovery Sanctions.* A trial court's decision on discovery sanctions is reviewed for an abuse of discretion. *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*,

13

122 Wn.2d 299, 338, 858 P.2d 1054 (1993). "A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds." *Id.* at 339.

CR 11 requires an attorney to certify that they have read each pleading, motion or legal memorandum, and that to the best of the party's or attorney's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the forementioned document is: (1) well grounded in fact, (2) warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, (3) not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

"CR 11 allows courts to impose sanctions upon a party and/or the attorney for signing pleadings, motions or memoranda in violation of the rule." *Blair v. GIM Corp.*, 88 Wn. App. 475, 481-82, 945 P.2d 1149 (1997). "CR 11 imposes a standard of 'reasonableness under the circumstances.'" *Bryant v. Joseph Tree, Inc.*, 119 Wn.2d 210, 220, 829 P.2d 1099 (1992). "The court should inquire whether a reasonable attorney in like circumstances could believe his or her actions to be factually and legally justified." *Id.* "The court is expected to avoid using the wisdom of hindsight and should test the

14

signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion or legal memorandum was submitted." *Id.*

Factors to be considered in assessing the reasonableness may include: (a) the time available to the signer; (b) the extent of the attorney's reliance on others, including the client, for factual support; (c) whether the signing attorney accepted the case from a forwarding attorney; (d) the complexity of the factual and legal issues; and (e) the need for discovery to develop factual circumstances underlying the claim. *Miller v. Badgley*, 51 Wn. App. 285, 301-02, 753 P.2d 530 (1988).

"CR 26(g) parallels CR 11." *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 531, 20 P.3d 447 (2001). CR 26(g) provides that when responding to a discovery request, an attorney must certify by signature that, after making a "reasonable inquiry," the discovery responses are: (1) consistent with the rules, (2) not interposed for any improper purpose, and (3) not unreasonable or unduly burdensome or expensive. "Reasonable inquiry" is judged by an objective standard. *Fisons*, 122 Wn.2d at 343. "In determining whether an attorney has complied with the rule, the court should consider all of the surrounding circumstances, the importance of the evidence to its proponent, and the ability of the opposing party to formulate a response or to comply with the request." *Id.*

15

A response to a discovery request must be consistent with the letter, spirit, and purpose of the rules. *Id.* at 344.

Proof of intentional withholding of information is not required for sanctions to be imposed under CR 26. *Carlson v. Lake Chelan Cmty. Hosp.*, 116 Wn. App. 718, 739, 75 P.3d 533, *review granted*, 150 Wn.2d 1017 (2003). An inadvertent failure to disclose information without a reasonable excuse is enough to establish a violation of the rule. *Id.*

The purpose of CR 26 is to deter discovery abuses, which include delaying tactics, procedural harassment, and mounting legal costs. *Demelash*, 105 Wn. App. at 531.

Sanctions are usually reserved for egregious conduct; they should not be viewed as "simply another weapon in a litigator's arsenal." *Biggs v. Vail*, 124 Wn.2d 193, 198 n.2, 876 P.2d 448 (1994).

Mr. Miller contends that the trial court abused its discretion in issuing sanctions. He assigns error to the trial court's conclusion that he failed to exercise diligence in forming the answer and discovery responses and that he improperly withdrew before identifying the parties. Mr. Miller maintains that he conducted a reasonable inquiry and provided appropriate responses under the circumstances.[4]

---

[4] As a preliminary matter, Mr. Miller contends that the sanctions are improper because he was not afforded due process rights. Before sanctions can be imposed, the court must provide minimal due process rights to the opposing party, which is satisfied

16

The primary sanctionable conduct that the trial court focused on was Mr. Miller's certification of three errors: (1) the interrogatory answer that did not identify the Farmers insurance policy, (2) the interrogatory answer that incorrectly listed Vilay as the registered owner, and (3) the answer that admitted the false familial relationship of the Vues.

We conclude that the trial court erred by sanctioning Mr. Miller for this conduct. First, in responding to the interrogatory and request for production regarding insurance coverage, Mr. Miller conducted a reasonable inquiry under the circumstances before certifying the discovery request. Mr. Miller sent the interrogatories to Mr. Vue, Agnes, and Vilay and asked them to review the questions. Mr. Vue, who was the only party to respond, was interviewed by Mr. Miller's office. Mr. Vue admitted that he did not tell Mr. Miller about another insurance policy even though he told Mr. Aaseby at the accident of the Farmers policy. Mr. Vue later justified withholding the information because he did not think he was covered. Additionally, neither Allstate nor the Aasebys informed Mr. Miller about another policy, although it appears both parties knew of the policy and were

---

with notice and an opportunity to be heard. *Watson v. Maier*, 64 Wn. App. 889, 899-900, 827 P.2d 311 (1992). Although Mr. Miller was not told about the initial sanction motions and hearings, when the trial court realized the error, Mr. Miller was given notice of the sanctions and was allowed to address the court on the issue. Minimal due process rights were met.

in contact with Mr. Miller. In sum, after conducting a reasonable inquiry, Mr. Miller had no knowledge of the Farmers policy and answered the interrogatory appropriately.

As for the interrogatory regarding the registered owner of the car, Mr. Miller's investigation into the matter was also reasonable. Vilay and Agnes did not respond to the interrogatories served to their home address. However, Mr. Vue was interviewed by Mr. Miller's office and responded that Vilay was the registered owner of the car. Mr. Vue declared that he thought this was the correct answer at the time he was interviewed. As additional verification of ownership, Allstate also told Mr. Miller that Vilay was the registered owner of the car. Considering the uncontested information gathered from these two sources, and considering that Vilay's insurance would cover the accident, it was reasonable under the circumstances for Mr. Miller to indicate that Vilay was the registered owner of the car.

On the other hand, Mr. Miller violated CR 11 when he signed and verified the answer to the Aasebys' complaint regarding Vilay's and Agnes's familial relationship.[5] Mr. Miller filed the answer after Mr. Vue had met with Mr. Miller's office and corrected the caption on the interrogatory request. Thus, Mr. Miller had implied knowledge that

---

[5] This error is not sanctionable under CR 26(g) because it does not involve a discovery violation. Pleading violations are addressed under CR 11.

18

Agnes and Vilay were brother and sister to Mr. Vue. His answer admitting that Vilay and Agnes were married parents of Mr. Vue was inaccurate and a pleading violation.

But, sanctions under CR 11 are not warranted or reasonable for this insubstantial violation. The family relationship was not crucial to the outcome of the litigation. Vilay, as the legal owner of the car, as opposed to the registered owner, was still the responsible party, regardless if Vilay and Agnes are parents or siblings of Mr. Vue. Furthermore, the fact that Cheu and Pai were Mr. Vue's parents did not impede litigation. The Aasebys did not assign fault to Mr. Vue's parents. Thus, it made no difference that Vilay and Agnes were not Mr. Vue's parents.

Moreover, Mr. Miller's conduct was not egregious. He simply admitted to a fact that the Aasebys also assumed was true.[6] A trial court should be "reluctant to impose sanctions for factual errors or deficiencies in a complaint before there has been an opportunity for discovery." *Bryant*, 119 Wn.2d at 222. Sanctions should not be encouraged for these errors because "[t]he notice pleading rule contemplates that discovery will provide parties with the opportunity to learn more detailed information about the nature of a complaint." *Id.* The parties had just begun discovery when Mr.

---

[6] Based on Mr. Aaseby's notes taken at the scene of the accident, the Aasebys had knowledge that Cheu and Pai were family members of Mr. Vue. Mr. Aaseby noted these names with Mr. Vue's Farmers policy information. No explanation is given as to how

19

Miller answered the complaint. Thus, the trial court abused its discretion by sanctioning Mr. Miller for this minor error.

There is no indication that Mr. Miller's responses were provided for an improper purpose. His responses were consistent with the rules. He conducted a reasonable inquiry and properly certified the interrogatories and answer under CR 26(g) and CR 11. The trial court abused its discretion in sanctioning Mr. Miller.

The other sanctionable conduct found by the trial court was Mr. Miller's withdrawal from the case. However, Mr. Miller's withdrawal as counsel was justified and did not prolong litigation. The action between Mr. Vue and the Aasebys was settled and dismissed. When the Aasebys brought the discovery issues to Mr. Miller, Mr. Miller acted appropriately by informing the Aasebys that he no longer represented Mr. Vue on the matter and then by informing Mr. Vue that he needed to contact the Aasebys. Once Mr. Miller's notice of withdrawal was filed, Mr. Vue's new counsel immediately addressed the issues raised by the Aasebys. The trial court abused its discretion by sanctioning Mr. Miller for withdrawing from the case.

Also, Mr. Miller's withdrawal does not appear to have been done in bad faith. In a letter to Allstate on June 20, 2005, Mr. Miller expressed his understanding that Allstate

they arrived at the conclusion that Agnes and Vilay were Mr. Vue's parents.

was reassigning Mr. Vue's matter to a new attorney, and indicated that he would maintain the file and provide it to the new attorney. Mr. Miller also understood that he could potentially be a witness in the case. Mr. Miller acted reasonably and was not required to interject himself back into the case.

The trial court abused its discretion in sanctioning Mr. Miller for violations of CR 11 and CR 26.

The outcome of the first issue is dispositive. As a result, we need not reach the amount of the sanctions and the dismissal of Mr. Miller's law firm.

*Cross Motion for Sanctions and Supersedeas Bond.* A supersedeas bond stays enforcement of a judgment while on appeal. RAP 8.1. "An appellant is under no obligation to supersede a judgment or a decree appealed from. It is a right and a privilege granted, in certain cases under certain conditions, to preserve the fruits of his appeal if he prevails, but it is not something he is obliged to do." *In re Estates of Sims*, 39 Wn.2d 288, 297, 235 P.2d 204 (1951).

The Aasebys contend that the trial court abused its discretion by not imposing sanctions on Mr. Miller after Mr. Miller objected to filing a supersedeas bond. The Aasebys contend that Mr. Miller misrepresented the law in his objection to their motion.

21

They also contend that Mr. Miller's objection was a frivolous filing because a few days after objecting, Mr. Miller paid the judgment in full.

The trial court deferred judgment on the issue of sanctions to this court, to be resolved on appeal. We determine that sanctions are not warranted. Mr. Miller provided valid case law that casts doubt on whether the Aasebys can compel Mr. Miller to file a supersedeas bond. Mr. Miller's objection was not frivolous, baseless, or filled with misrepresentations. The Aasebys are not entitled to sanctions on their cross motion.

We remand to the trial court to order that the Aasebys are not entitled to the sanctions requested in their cross motion.

*Attorney Fees on Appeal.* RAP 18.8(d) states that the remedy for a violation of the rules of appellate procedure is set forth in RAP 18.9. "The court may condition the exercise of its authority under this rule by imposing terms or awarding compensatory damages, or both, as provided in rule 18.9." RAP 18.8(d). RAP 18.9(a) allows an appellate court to sanction a party with terms or compensatory damages when the party (1) uses the appellate court rules for the purpose of delay, (2) files a frivolous appeal, or (3) fails to comply with the rules.

Yet again, the Aasebys request sanctions against Mr. Miller, this time for his actions on appeal. The Aasebys contend that Mr. Miller's entire appeal is frivolous. The

22

Aasebys also contend that Mr. Miller's motion to dismiss the Aasebys' cross appeal as untimely was a baseless and frivolous motion. The Aasebys request terms and reasonable attorney fees under RAP 18.8(d) and RAP 18.9(a).

We deny the Aasebys' request. Sanctions are usually reserved for egregious conduct; they should not be viewed as "simply another weapon in a litigator's arsenal." *Biggs*, 124 Wn.2d at 198 n.2. Mr. Miller's motion and appeal were not filed for the purpose of delay, were not frivolous, and complied with the rules. Mr. Miller asserted valid arguments on appeal. Sanctions are not warranted.

Mr. Miller also requests attorney fees on appeal. He contends that the Aasebys engaged in misrepresentations and frivolous claims at trial and on appeal. He relies on RCW 4.84.185 as authority for attorney fees for baseless claims. RCW 4.84.185 allows the prevailing party to recover attorney fees from the nonprevailing party for frivolous actions. While the Aasebys' incessant request for sanctions is troublesome, we deny Mr. Miller's request. The Aasebys' initial request for CR 11 and CR 26(g) sanctions was not frivolous and formed a reasonable basis for appeal.

We reverse the trial court's imposition of sanctions against Mr. Miller. We deny both parties' request for attorney fees on appeal. Finally, we remand to the trial court for denial of the Aasebys' April 2012 cross motion for sanctions.

No. 30093-5-III
*Aaseby v. Vue*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Kulik, J.

WE CONCUR:


_____          _____
Siddoway, A.C.J.                          Brown, J.

24