# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>ISABELLE LATOUR,<br><br>     Respondent,<br><br>   v.<br><br>SEAN KUHLMEYER,<br><br>     Appellant. | DIVISION ONE<br><br>No. 85544-1-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Sean Kuhlmeyer appeals from the order of the superior court granting his ex-spouse's request for a 20-year domestic violence protection order protecting herself and their child from Kuhlmeyer and the order of the superior court imposing a CR 11 sanction against his attorney. On appeal, Kuhlmeyer asserts that the trial court erred by entering that order and that the court abused its discretion in imposing that sanction. Finding no error, we affirm.

I

The matter before us involves Kuhlmeyer's eighth and ninth appeals to this court in the last six years, all of which originated from a February 2017 marital dissolution petition initiated by Isabelle Latour. We recite the facts as previously established by both our court and the trial court over the course of Kuhlmeyer's numerous appeals in light of Kuhlmeyer's challenge to the evidentiary sufficiency of the trial court's domestic violence protection order in

this matter, which we discuss, <u>infra</u>, and the trial court's stated reliance on this history in entering the challenged order.

*Kuhlmeyer I*

In January 2020, in an unpublished opinion, we characterized Kuhlmeyer's appeal in that matter as follows:

> Sean Kuhlmeyer appeals an arbitration award entered in this lengthy, hotly disputed marital dissolution action. He contends that the arbitrator was partial, refused to consider his evidence, and entered an award containing facial legal errors. He also appeals the trial court's order confirming the arbitration award and all of the other orders entered in this action.

<u>In re Marriage of Kuhlmeyer</u>, No. 78765-9-I, slip op. at 1 (Wash. Ct. App. Jan. 21, 2020) (unpublished), https://www.courts.wa.gov/opinions/pdf/787659.pdf (<u>Kuhlmeyer</u> I).

The pertinent facts from that decision are as follows:

> Sean and Isabelle Kuhlmeyer married in 2000, later had a child, and separated in 2016. In February 2017, Isabelle petitioned for dissolution of the marriage.
> In January 2018, the parties agreed to arbitrate their disputes with Cheryll Russell. The arbitration was governed by chapter 7.04A RCW. The parties authorized the arbitrator to determine a final parenting plan, each party's income, a child support order, the division of assets and debts, a restraining order, and an award of attorney fees.
> Arbitration was conducted over two days. The parties testified, counsel argued, and a substantial volume of exhibits were introduced. In May 2018, the arbitrator entered a comprehensive 153-page award that set forth findings and conclusions resolving all issues. Sean did not agree with any of the rulings, contending that the arbitration award was "a travesty of justice" and "rife with errors."
> In June 2018, Sean moved to vacate the arbitration award and requested a new trial. He also filed for bankruptcy and demanded that all issues before the arbitrator be re-litigated.

Isabelle then asked the superior court to affirm the non-financial issues resolved in binding arbitration.

Subsequently, the court entered an order partially confirming the arbitration award (reserving resolution of financial issues pending the completion of Sean's bankruptcy), findings and conclusions, and an order restraining Sean from contacting Isabelle for 60 months.[1] The court also entered a final parenting plan that restricted Sean's parenting time with, and the ability to make major decisions about, the child. The court imposed those parenting restrictions, under RCW 26.09.191, based on Sean showing "no evidence of being able to stop his compulsively self-destructive litigation pattern, short of vindication, which h[e] is unlikely to get" and his abusive use of conflict "that endangers and damages the psychological development" of their child.

In July 2018, Sean filed a "motion and request for exercise of sua sponte powers" and asked the court to consider new evidence of alleged misconduct by Isabelle's counsel in conjunction with his motion to strike the arbitration award. Isabelle responded by asking the court for relief from Sean's incessant and frivolous motions.

After a hearing, the court found Sean's repeated filings needlessly increased Isabelle's litigation costs and that his threats to continue improper litigation were harassing and abusive. Thus, in an effort to impede Sean's "ability to abusively use court filings and legal proceedings to harass" Isabelle, the court prohibited Sean from filing any more motions unless he submitted "a one-page statement regarding its subject matter" to the court and received approval to file the motion. The court further awarded Isabelle attorney fees "for the necessity of reviewing thousands of pages of improper filings and addressing multiple improperly filed and frivolous motions." The court denied Sean's grievance against the [guardian ad litem], motion to vacate the arbitrator's award, motion for new trial, and motion for sanctions against Isabelle's counsel.

In August 2018, Sean filed a notice of appeal challenging numerous orders entered by the trial court between February and July 2018. Isabelle then filed a motion for contempt in which she asserted Sean was failing to comply with (1) the temporary child support order, (2) the communications provision of the parenting plan by continuing to contact her, (3) the restraining order by not surrendering his weapons, and (4) the order directing him to obtain court permission prior to filing future motions. Following yet

---

[1] The June 2018 restraining order also protected Latour's and Kuhlmeyer's son against Kuhlmeyer. The order indicated that Kuhlmeyer "is restrained from communicating with or contacting the minor child *except as expressly provided in the parenting plan*. Contact outside the affirmative conditions allowing contact which are set forth in the parenting plan is a violation of this restraining order." (Emphasis added.)

another hearing, the court found Sean in "contempt of court" and denied Sean's request for permission to file several other motions.

In September 2018, the court denied Sean's motion to reconsider the contempt order. That same month, the bankruptcy court dismissed Sean's petition after concluding that his petition "was filed in bad faith," "to prevent the resolution of the dissolution proceeding" with Isabelle, and "unfairly manipulate[ ] the bankruptcy code."

In October 2018, the trial court denied Sean's numerous requests to file motions to reconsider and/or for a contempt order against Isabelle. The court stated: "The potential motions either are repetitive of motions that have been previously denied, or have no merit on their face."

In November 2018, Sean filed a second notice of appeal challenging various orders entered in the proceeding between August and October 2018.

In December 2018, the court entered findings and conclusions regarding financial issues, a final order confirming the arbitration award and assessing sanctions against Sean, a final dissolution decree, and a final child support order. The court denied Sean's motion for a continuance and for a new trial as repetitive of past motions and denied his other motions as meritless. Sean challenged these orders in January 2019 in a third notice of appeal.

Kuhlmeyer I, slip op. at 1-5 (some footnotes omitted). We also noted, in several

footnotes, as follows:

In its July 31, 2018 order on case management prohibiting Sean from sending e-mails to the court, the trial court observed: "In the past eight weeks, [Sean] has filed approximately 38 motions. . . . He also has emailed [sic] this court 31 times since June 2, 2018. Frequently, the emails [sic] improperly seek legal advice on how to file more motions, or to complain of some other, unrelated, situation." The court noted that Sean "has engaged in repetitive litigation that is harassing and abusive."

Kuhlmeyer I, slip op. at 3 n.4.

In making its contempt findings, the court noted how Sean had "been warned in multiple court orders to follow the orders of this court" and that "[n]otwithstanding the warnings, [he] filed almost 500 pages of documents less than two court days before this hearing[,]" with the "vast majority of the content" of his materials asserting "frivolous claims."

Kuhlmeyer I, slip op. at 4 n.6.

>   Specifically, on August 29, 2018, the court denied Sean permission to file a motion to modify the parenting plan, a motion for contempt against Isabelle, and a motion "regarding personal property."

Kuhlmeyer I, slip op. at 4 n.7.

>   The bankruptcy court summarized how Sean intended to use the bankruptcy code to disadvantage Isabelle in the dissolution proceedings as follows:
>
>   >   [T]he debtor [Sean] wants to use an asset in which [Isabelle] has a substantial economic interest to satisfy [Isabelle's] claims against him, arising out of the marriage dissolution. While that is egregious under almost any circumstance, it is made even worse here by the additional facts that: (1) [Isabelle] has occupied the home and paid the mortgage since 2016; (2) [Isabelle] is exposed to the risk that she would be unable to take Washington State's $125,000 homestead exemption, to which she would be entitled but for this case; and (3) the debtor didn't file this case until after the arbitrator involved in the dissolution case concluded the home should be awarded to [Isabelle].

Kuhlmeyer I, slip op. at 4-5 n.8.

We considered his challenge to the arbitration award along with his request that we "reverse all orders of the trial court," and we held that his assertions had no merit, were unsupported by the record, or otherwise failed to establish an entitlement to appellate relief.  Kuhlmeyer I, slip op. at 5-10.

*Kuhlmeyer II*

Two years later, in March 2021, in our second unpublished opinion in this case, we characterized Kuhlmeyer's appeal therein as follows: "Sean Kuhlmeyer challenges several trial court orders entered following the dissolution of his marriage with Isabelle Kuhlmeyer.  The 'law of the case' doctrine precludes

several assignments of error. Others are barred as untimely, unsupported by the record, or moot. The remaining challenges lack merit." In re Marriage of Kuhlmeyer, No. 81002-2-I, slip op. at 1 (Wash. Ct. App. Mar. 8, 2021) (unpublished) https://www.courts.wa.gov/opinions/pdf/810022.pdf (Kuhlmeyer II). We noted that, in June 2018, "[t]he court appointed Mollie Hughes to serve as case manager and directed Hughes to conduct a six-month review of the parenting plan" and that she

> completed her review and filed her report in August 2019. She stated that since the court's December 2018 orders, the parties' dispute about Sean's residential time "spiraled from bad to worse." Isabelle unilaterally cancelled multiple visits set forth in the parenting plan; second-guessed the visitation supervisor, who later resigned; refused to cooperate with Hughes; and filed a motion to have Hughes removed as case manager. Meanwhile, Sean's persistent "legal wrangling" with Isabelle's attorney "served to incite and inflame the situation" and was "driven by obsessive thoughts of unfairness and victimization related to the withholding of visits with his child." Hughes admonished Sean multiple times "for his behavior and set strict guidelines for communication, financial accountability and restraint in his filings." Hughes also urged Sean to retain a family law attorney "to insulate him from his impulsive attempt at using the legal system to avoid his own culpability."
>
> Hughes reported that since December 2018, Sean had only one two-hour supervised visit with his child. Hughes recommended a phased-in return of Sean's residential time. She also described her multiple attempts to resign as case manager because the parties' ongoing turmoil "made it impossible for [her] to be effective." But Hughes agreed to delay her resignation twice until after she completed her August 2019 report.
>
> Isabelle then started an arbitration proceeding, as required by the parenting plan, to challenge Hughes' recommendations. Undeterred, the parties continued litigating their disputes in the trial court. Isabelle applied for a writ of garnishment in the amount of $113,211. Sean responded with a series of pleadings seeking to stay enforcement of the judgment, disgorge garnished funds, and claim an exemption. On September 13, 2019, the trial court entered a partial judgment and order to pay the writ of garnishment and denied Sean's exemption claim.

6

Also in September 2019, Sean filed a "Motion to Modify the Parenting Plan, Immediately Reinstating the Parenting Plan Previously in Place," claiming that the parenting plan was not in the child's best interest and there was no need for him to establish a substantial change in circumstances.

In November 2019, Sean served a subpoena duces tecum on his child's school to produce all educational records and correspondence. He moved to waive the civil fees and surcharges and to proceed "in forma pauperis." Isabelle moved to quash the subpoena and requested an order clarifying the sole decision-making provision in the parenting plan.

In December 2019, the trial court granted Isabelle's motion to quash, ordered that "[n]o documents shall be disclosed under that subpoena," and clarified that Isabelle "shall continue to have sole discretion as to the child's health, medical and educational decisions in all regards." The court also found Sean did not meet his burden to establish adequate cause to hold a hearing on the motion to modify the final parenting plan and entered an "Order Denying Adequate Cause/Motion To Modify." The court denied Sean's motion to proceed in forma pauperis and stated in its order:

> Respondent is reminded of the court's order of July 9, 2018, allowing ONE MOTION PER YEAR, preceded by a request for PERMISSION TO FILE SUCH MOTION. It is still in effect. Thus, Respondent's list of upcoming motions (in his motion to proceed in forma pauperis) is not pertinent.

On January 8, 2020, Sean filed a notice of appeal, challenging the trial court's December 2019 orders.

. . . .

Following [our decision in] Kuhlmeyer I, in spring 2020, Sean (1) submitted in the trial court a "request to file a Motion for Contempt" against Isabelle; (2) "repeatedly and without permission contacted" the trial court by e-mail, "inquiring as to the status of his motion"; (3) filed "copies of memos to opposing counsel and the case's arbitrator entitled 'Threats' to pursue further litigation"; and (4) filed an eight-page "Memo of Law on Parental Alienation." On May 8, 2020, the trial court denied Sean's request for permission to file a motion for contempt and entered an order warning Sean that his e-mails to the court and filing of frivolous pleadings "may be met with sanctions." Sean sought review of this order in a "Second Notice of Appeal" filed in June 2020.

Kuhlmeyer II, slip op. at 3, 5-9. (footnotes omitted).

7

We affirmed the trial court's rulings.  Kuhlmeyer II, slip op. at 11-18.[2]

*Kuhlmeyer III*

In November 2022, in our third unpublished opinion in this case, we

characterized Kuhlmeyer's appeal as follows:

> Sean Kuhlmeyer appeals the trial court's dismissal of his lawsuit
> against his ex-wife and several professionals involved in their
> dissolution as abusive litigation.  He also seeks relief from future
> filing restrictions ordered under the abusive litigation act (ALA),
> chapter 26.51 RCW.  Kuhlmeyer argues the ALA is unconstitutional
> and the court misapplied the ALA to his lawsuit.

In re Marriage of Kuhlmeyer, No. 82828-2-I, slip op. at 1-2 (Wash. Ct. App. Nov.

7, 2022) (consolidated with No. 83312-0-I), review denied, 1 Wn.3d 1009 (2023)

(unpublished) https://www.courts.wa.gov/opinions/pdf/828282.pdf (Kuhlmeyer

III).

We set forth the facts therein as follows:

> In July 2020, Kuhlmeyer sued Latour; her dissolution
> attorney, Karma Zaike; Zaike's law partner, Michael Bugni; the
> guardian ad litem (GAL), Nancy Weil; and Latour's friends, Douglas
> and Danielle Kisker.  In the 399-page complaint, Kuhlmeyer
> variously asserts more than 30 tort claims against the defendants.
> Each claim is rooted in facts related to Kuhlmeyer and Latour's
> dissolution proceeding.
> In January 2021, Latour moved the court for an order
> restricting Kuhlmeyer from engaging in abusive litigation under the
> ALA.  The court held a hearing on the motion, and as a threshold
> matter, found by a preponderance of the evidence that Kuhlmeyer
> and Latour were in a prior intimate partner relationship and that
> Kuhlmeyer committed domestic violence against Latour.  It then
> found that the ALA applied to Kuhlmeyer and set the matter for an
> evidentiary hearing in April to determine whether it should dismiss
> his lawsuit as abusive litigation.

---

[2] On September 2022, in a consolidation of three of Kuhlmeyer's notices of appeal, a commissioner of this court denied Kuhlmeyer's request for discretionary review.  In re Marriage of Kuhlmeyer, No. 84021-5-I (consolidated with Nos. 83085-6-I, 83785-1-I), Commissioner's Ruling Denying Discretionary Review at 1-7 (September 19, 2022).

After the hearing, on May 7, 2021, the court issued an "Order Restricting Abusive Litigation of Attorney Sean Kuhlmeyer." It determined that (1) Kuhlmeyer advanced his lawsuit primarily to harass, intimidate, or maintain contact with Latour; (2) the parties already litigated all the claims in the dissolution proceeding; and (3) a court previously found the allegations to be without the existence of evidentiary support. The court dismissed the lawsuit with prejudice under both the ALA and its inherent authority to control the conduct of litigants who impede orderly proceedings. It then awarded the defendants attorney fees and costs. The court also ordered that Kuhlmeyer must obtain permission from the court before filing a new case or a motion in an existing case for 72 months.

Kuhlmeyer III, slip op. at 2-3 (footnotes omitted).

We then considered and rejected his challenge to the constitutionality of the Abusive Litigation Act. Kuhlmeyer III, slip op. at 4-7. Thereafter, in addressing his challenge that substantial evidence did not support the trial court's finding that he committed domestic violence against Latour, we stated as follows:

Here, the trial court found Kuhlmeyer committed domestic violence against Latour because "the [dissolution] court entered a restraining order pursuant to RCW 26.09[.060], in which it found that Mr. Kuhlmeyer, the restrained person, 'represents a credible threat to the physical safety' of Ms. Latour." Substantial evidence supports that finding.

The record shows that in June 2018, the dissolution court issued a restraining order under RCW 26.09.060. The order prohibited Kuhlmeyer from contacting Latour for five years. And the court explicitly found that Kuhlmeyer is "a former spouse" of Latour and that Kuhlmeyer "represents a credible threat to the physical safety of" Latour.

Kuhlmeyer argues that the "credible threat" finding in the restraining order is itself not supported by substantial evidence. But Kuhlmeyer challenged whether the restraining order was proper in his first appeal of the dissolution. See [Kuhlmeyer I], at 8-9. We rejected that claim. Id. Any ability to challenge the underlying basis of the restraining order has long since expired. See RAP 5.2(a), 12.7(a).

Kuhlmeyer III, slip op. at 9-10.  In affirming the trial court's determination that the primary purpose of Kuhlmeyer's lawsuit was to harass, intimidate, or maintain contact with Latour, we stated that

> [t]he ALA creates a rebuttable presumption that litigation is being initiated, advanced, or continued "primarily for the purpose of harassing, intimidating, or maintaining contact with the other party" if there is evidence that "[t]he same or substantially similar issues between the same or substantially similar parties have been litigated within the past five years," or if courts have sanctioned the alleged abusive litigant "for filing one or more cases, petitions, motions, or other filings . . . that were found to have been frivolous, vexatious, intransigent, or brought in bad faith involving the same opposing party."  RCW 26.51.050(1), (3).
>
> Here, the court found that Kuhlmeyer litigated the "facts surrounding the Dissolution . . . repeatedly and obsessively," and that "King County Superior Court judicial officers have held Mr. Kuhlmeyer in contempt, have found him in violation of CR 11, have found him in violation of the Rules of Professional Conduct, and have imposed prefiling restrictions."  Those findings support a rebuttable presumption that Kuhlmeyer advanced the litigation primarily to harass, intimidate, or maintain contact with Latour.  RCW 26.51.050(1)-(3).  Kuhlmeyer offered no evidence to rebut that presumption.

Kuhlmeyer III, slip op. at 10-11 (footnote omitted).  Accordingly, as pertinent here, we affirmed the trial court's orders.  Kuhlmeyer III, slip op. at 15.

*20-Year Domestic Violence Protection Order and Contempt Hearing*

After our decision in Kuhlmeyer III, on June 7, 2023, Latour filed a petition for a domestic violence protection order, pursuant to RCW 7.105.100.[3]  Her petition set forth the following allegations:

> **Most Recent Incident**: . . . .
> Sean has been harassing me in violation of the restraining order by having an unauthorized person contact me demanding contact with

---

[3] Latour also filed a motion for renewal of a domestic violence protection order, setting forth the same allegations as she provided in her petition.  The trial court later denied this motion on the basis that it had entered a new domestic violence protection order.

our son.  Pursuant to our 2018 Parenting Plan, Sean could have immediately started visitation with a professional supervisor, but he refused.  Currently he is not allowed contact except through the reunification process which, given that he abandoned our son from ages eight through 15, is going slowly.[]

In February 2023, our parenting Arbitrator ruled that Sean must participate in reunification therapy prior to supervised visitation commencing.  There have been no further rulings that authorize the commencement of supervised visits.  The Arbitrator's February 2023 ruling held as follows:

> After considering the provisions in the Final Parenting Plan for supervised visits, the effect of adding reunification therapy to the schedule, the time that has elapsed since [C.K.] had any extended contact with Mr. Kuhlmeyer, as well as [C.K.]'s age, school commitments and other obligations (such as sports or extracurricular activities), this Arbitrator FINDS Ms. Burgess' recommendation is reasonable.  This Arbitrator agrees reunification therapy should begin before adding on the alternating weekend supervised visits.

However, in the past several weeks, I have received more than a dozen contacts from a woman who stated she contacted me on behalf of Sean seeking supervised visitation in violation of the order.  She is [sic] now contacted me daily and sometimes several times a day using both phone calls and e-mails.  These contact [sic] are equal in scope to the overbearing and overwhelming manner Sean has traditionally utilized and I am becoming traumatized from her contacts.  It is getting to the point that I am stressed when the phone rings as I am fearful it will be Sean's agent harassing me.

I believe that Sean has increased these abusive contacts because he thinks that the prior order expired in early May. . . .  I am asking for an immediate temporary order because Sean's minions are increasing frequency and intensity of abusive contacts.

On March 6, 2023, Judge Sean O'Donnell ordered Sean to file a Standard Financial Declaration so that our Arbitrator could determine a payment plan for Sean to pay the past judgments and sanctions he owes arising from his abusive litigation.  As of the filing of this action, he has failed to comply.

Sean has had several attorneys in the past, sometimes multiple attorneys simultaneously, and is a lawyer himself.  He has been actively represented by counsel since last fall and had a new

11

lawyer appear on April 21, 2023. Since the attorney's appearance, Sean's escalation has skyrocketed. He has a woman constantly calling me requesting to see our son in violation of the order, he has failed to comply with Judge Richardson's May 20, 2018 order to transfer assets to me, he has failed to comply with Judge O'Donnell's March 6 or May 4, 2023 orders. Immediately upon the entry of his latest attorney's appearance, my attorney has been harassed under the guise of litigation, but it is the same rehashing of Sean's prior abusive tactics – eccentrically long e-mails with false assertions, threats and promises of future litigation if I do not cave to Sean's demands. Sean has teamed up with an attorney who, like him, has a personal vendetta against my attorney. They have both filed (and had dismissed) a shocking number of grievances against my attorney with the WSBA. Every time one is dismissed, they appeal it as far as it can go. I believe Sean has deliberately hired this attorney as an intimidation tactic to me as he has historically been found to have engaged in tactics designed to "create a chilling effect" on representing me. Sean's current attorney has repeatedly violated the court's case management orders in the same way Sean does claiming that the orders "do not apply" to him. He has contacted the court in violation of the orders seeking at least two hearings which would violate the Parenting Plan, the Court's Arbitration Orders and the Case Management Orders.

A recent pleading from Sean testified that he is working for a restaurant delivery company. I live in fear that my son or I will initiate an online order and Sean will come to my door claiming that I summoned him. I would like an express order that Sean must stay 1000 feet away from my home and me. I feel that the police were not as diligent in enforcing the Restraining Order as Sean has engaged in many violations with impunity. Judge Richardson entered an express order finding Sean had violated the Restraining Order, but the police and prosecutor's office would not prosecute.

Sean also filed two separate documents with the Court of Appeals, Div I with clear threats as follows:

> Sociologically, Division-I's decision is exceedingly dangerous, and lives will be lost as a result, because it will encourage former intimate partners to lie to get false domestic violence findings (which is already an endemic problem but will now get worse), and encourage them to abuse their former partner by committing torts against them. **That will escalate conflict between partners, which will eventually result in violence and death** because their

12

> interpersonal situation was needlessly escalated by the vindictive partner who was able to manipulate the process to obtain domestic-violence findings against their ex-partner and then commit torts against them which they have no power to rectify. **A certain number of these cases will result in violence as either the targeted former partner either loses their ability to cope with the legal abuse and torts against them and reacts with violence,** or, the vindictive targeting partner, when confronted with the fact their behaviors and torts has exacerbated the conflict, and they realize they are about to lose their ability to continue to harass their ex because their behaviors have finally drawn the attention of the courts and they are being corrected, reacts with violence. *See Sean Kuhlmeyer's Petition for Review to the Supreme Court at 19-21.*

> **Past Incidents.** . . . .
> Sean's history of violence and abuse is well documented in our Arbitration proceeding and [guardian ad litem] report which resulted in a five-year restraining order.
>
> After the finalization of our parenting plan and entry of the restraining order, our docket has grown from 250 pleadings to 782 prior to filing of this renewal. Sean has been sanctioned dozens of times for abusive litigation and is currently the subject of a five-year bar order entered under King County Cause No. 21-2-00105-4.

The trial court granted her request for a temporary restraining order and scheduled a hearing for June 16, 2023.

At that hearing, the trial court heard argument from counsel and ruled as follows:

> I am issuing a protective order under RCW 7.105. There is a history of domestic violence that is well documented, at least, in my mind, in the file. And I would say that the behavior that has been alleged in the petition I find credible, because I'm very familiar with the docket here.
> And I do find that, you know, describing it as Mr. Kuhlmeyer just putting himself into a cage, I think was the term that [Kuhlmeyer's counsel] used, is really grossly minimizing his conduct here, which has been egregious, which has been abusive, which

13

has been persistent, which has been extraordinary. And it does create a reasonable -- any reasonable person would view that and consider that as a compendium of -- not compendium, but a continuum of threats to their person and to their safety, in addition to the prior incidents of domestic violence that -- that have been detailed in this docket.

And so I -- I'm going to enter a 20-year order. I think that's appropriate.[4]

On June 20, 2023, the trial court entered a written domestic violence protection order protecting Latour and their minor child against Kuhlmeyer for a period of 20 years. The trial court concluded that Kuhlmeyer

has subjected the protected person to domestic violence: physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking.

The trial court found that Kuhlmeyer was a

**Credible Threat**: The restrained person represents a credible threat to the physical safety of the protected person/s. From the outset of this case, Ms. Latour has presented credible evidence regarding Mr. Kuhlmeyer's actions to coercively control her as well as verbal, physical and emotional abuse directed toward her and her son. This has manifested itself as well in years of scorched earth, abusive litigation which has far exceeded the description of vigorous advocacy. Any reasonable person experiencing this conduct would be in fear for their mental, emotional and physical safety. Ms. Latour's representations on this matter is wholly credible. Mr. Kuhlmeyer's objections are unpersuasive and unsupported by the evidence put before this Court.

As pertinent here, the order mandated that Kuhlmeyer attend a state-certified domestic violence perpetrator treatment program and also conditioned his contact with his minor child to coincide with the contact provisions set forth in the parties' parenting plan.

---

[4] The court also entered an order mandating that Kuhlmeyer surrender any weapons.

Two months after entry of the court's protective order, in August 2023, Latour filed a motion requesting that the court find Kuhlmeyer in contempt for, among else, failing to attend state-certified domestic violence perpetrator treatment. Later that month, Kuhlmeyer's trial counsel signed and filed a response to that motion in the trial court captioned as "Opposition to Petitioner's Motion to Set Show Cause Hearing."[5]

During a subsequent hearing on Latour's contempt motion—and in a later-entered written order—the trial court imposed a CR 11 sanction against Kuhlmeyer's attorney on the basis that his legal filing opposing Latour's contempt motion had relitigated issues that were previously and conclusively addressed by the court.

Kuhlmeyer now appeals.

II

Kuhlmeyer presents two challenges to the trial court's entry of a 20-year domestic violence protection order protecting Latour and their minor child against him. His challenges fail.

---

[5] There were also several documents filed with the trial court after Latour's July 2023 contempt motion. These documents were signed by Kuhlmeyer, captioned as "Declaration of Sean Kuhlmeyer" or "Reply Declaration of Sean Kuhlmeyer," and included numerous exhibits. Kuhlmeyer's trial counsel appears to have somewhat assisted him with these documents, as evidenced by the documents' creation and signature log and the appearance of Kuhlmeyer's trial counsel's business logo on each page of the "declaration" documents and their corresponding exhibit identification sheets. None of these documents contained Kuhlmeyer's attorney's signature.

A

Kuhlmeyer first asserts that the trial court erred in entering the domestic violence protection order in question because substantial evidence does not support the trial court's conclusion that he had subjected Latour to domestic violence. Kuhlmeyer's assertion is unavailing.

We have stated that

> [w]hen an appellant contends that findings of fact do not support the trial court's conclusions, we limit our review to determining whether substantial evidence supports the findings and, if so, whether those findings support the conclusions of law. Nguyen v. City of Seattle, 179 Wn. App. 155, 317 P.3d 518 (2014). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person that the finding is true. In re Estate of Langeland, 177 Wn. App. 315, 320, 312 P.3d 657 (2013). This court defers to the trier of fact on the persuasiveness of the evidence, witness credibility, and conflicting testimony. In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Graser v. Olsen, 28 Wn. App. 2d 933, 941-42, 542 P.3d 1013 (2023).

In considering a petition for a domestic violence protection order, a trial court "shall issue a protection order if it finds by a preponderance of the evidence that the petitioner has proved . . . that the petitioner has been subjected to domestic violence by the respondent." RCW 7.105.225(1)(a).

Our legislature has defined "domestic violence" to mean:

> (a) Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking of one intimate partner by another intimate partner; or
> (b) Physical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive

control; unlawful harassment; or stalking of one family or household member by another family or household member.

RCW 7.105.010(9).  As pertinent here, our legislature defined "coercive control"

to mean

> a pattern of behavior that is used to cause another to suffer physical, emotional, or psychological harm, and in purpose or effect unreasonably interferes with a person's free will and personal liberty.  In determining whether the interference is unreasonable, the court shall consider the context and impact of the pattern of behavior from the perspective of a similarly situated person.  Examples of coercive control include, but are not limited to, engaging in any of the following:
> . . .
> (v) Engaging in vexatious litigation or abusive litigation as defined in RCW 26.51.020 against the other party to harass, coerce, or control the other party, to diminish or exhaust the other party's financial resources, or to compromise the other party's employment or housing.

RCW 7.105.010(4)(a).

Furthermore, our Supreme Court has held that a parent's fear for the safety of their child is a legitimate basis to grant a domestic violence protection order and that a child's exposure to domestic violence against a parent "constitutes domestic violence under [former] chapter 26.50 RCW."  Rodriguez v. Zavala, 188 Wn.2d 586, 598, 398 P.3d 1071 (2017).

Here, the trial court concluded that Kuhlmeyer had subjected Latour and their child to domestic violence.  As set forth above, the court found in its oral ruling during the hearing on Kuhlmeyer's motion that

> [t]here is a history of domestic violence that is well documented, at least, in my mind, in the file.  And I would say that the behavior that has been alleged in the petition I find credible, because I'm very familiar with the docket here.
> And I do find that, you know, describing it as Mr. Kuhlmeyer just putting himself into a cage, I think was the term that

17

[Kuhlmeyer's counsel] used, is really grossly minimizing his conduct here, which has been egregious, which has been abusive, which has been persistent, which has been extraordinary. And it does create a reasonable -- any reasonable person would view that and consider that as a compendium of -- not compendium, but a continuum of threats to their person and to their safety, in addition to the prior incidents of domestic violence that -- that have been detailed in this docket.

Later, in its written order, the trial court reiterated its conclusion that

Kuhlmeyer had subjected Latour and their son to domestic violence because

[f]rom the outset of this case, Ms. Latour has presented credible evidence regarding Mr. Kuhlmeyer's actions to coercively control her as well as verbal, physical and emotional abuse directed toward her and her son. This has manifested itself as well in years of scorched earth, abusive litigation which has far exceeded the description of vigorous advocacy. Any reasonable person experiencing this conduct would be in fear for their mental, emotional and physical safety. Ms. Latour's representations on this matter is wholly credible. Mr. Kuhlmeyer's objections are unpersuasive and unsupported by the evidence put before this Court.

Substantial evidence supports the trial court's conclusion that Kuhlmeyer subjected Latour and their child to domestic violence. The trial court, for its part, indicated that it was familiar with the long history of this case and stated that its conclusion was predicated, in part, on that history. As set forth at length above, in three of our prior decisions in this matter, this case is replete with evidence supporting that Kuhlmeyer has, over the course of six years of litigation, subjected Latour and her child to domestic violence. Moreover, the trial court found Latour's allegations of more recent domestic violence credible and Kuhlmeyer's allegations not so. We defer to the trial court in matters of witness credibility. Graser, 28 Wn. App. 2d at 941-42 (citing Knight, 178 Wn. App. at

18

937). Furthermore, the court determined that a reasonable person experiencing Kuhlmeyer's conduct would fear for their mental, emotional, and physical safety.

Given all of that, the record contains ample evidence supporting Kuhlmeyer's vexatious and abusive history in this case, Latour's credible allegations of conduct set forth in her petition, and the trial court's determination that her allegations of Kuhlmeyer's misconduct are part of the larger continuum of ongoing abuse initiated by Kuhlmeyer against her and their son. Rodriguez, 188 Wn.2d at 598.

Therefore, substantial evidence supports the trial court's conclusion that Kuhlmeyer had subjected Latour and their child to domestic violence. Thus, the trial court did not err in so concluding. Accordingly, Kuhlmeyer's assertion to the contrary fails.

B

Kuhlmeyer next contends that the trial court erred by including his minor child in the 20-year domestic violence protection order. This was error, according to Kuhlmeyer, because the trial court did not have the authority to restrain him from contacting his minor child for a period of time exceeding one year. Because the protection order did not bar Kuhlmeyer from contacting his minor child but, rather, conditioned his contact to be that which was expressly provided in the parties' parenting plan, Kuhlmeyer's contention fails.

We review a trial court's entry of a domestic violence protection order for abuse of discretion. Rodriguez, 188 Wn.2d at 590. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable

19

grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997) (citing In re Marriage of Kovacs, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); In re Marriage of Wicklund, 84 Wn. App. 763, 770 n.1, 932 P.2d 652 (1996)). A trial court's decision is based on untenable grounds if, among else, the court applies the wrong legal standard. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 669, 230 P.3d 583 (2010).

RCW 7.105.315 reads, in pertinent part that, "[i]f a protection order restrains the respondent from contacting the respondent's minor children, the restraint must be for a fixed period not to exceed one year." RCW 7.105.315(2)(a).

Here, the trial court's 20-year domestic violence protection order, in pertinent part, set forth that Kuhlmeyer

> is restrained from communicating with or contacting the minor child *except as expressly provided in the parenting plan*. Contact outside the affirmative conditions [allowing] contact which are set forth in the parentin[g] plan is a violation of this restraining order.

(Emphasis added.)

The final parenting plan in question identified several reasons for limiting Kuhlmeyer's contact with his child, set forth a detailed framework regarding the manner in which he was authorized to have contact with his child, and set forth steps that he would need to take in order to have additional contact. The parenting plan did not have the effect of unilaterally barring Kuhlmeyer from contacting his child. See also Kuhlmeyer I, slip op. at 2-3; Kuhlmeyer II, slip op. at 5-9.

20

The trial court's protection order did not unlawfully restrain Kuhlmeyer from having contact with his child. Rather, the protection order conditioned Kuhlmeyer's contact with his child such that it would coincide with the framework previously entered by the trial court in the parties' final parenting plan, an operative framework outside the purview of chapter 7.105 RCW.

Furthermore, the parenting plan, for its part, did not prohibit Kuhlmeyer from contacting his child but, rather, identified reasons for restricting his contact with his child along with a series of steps through which he could obtain additional contact. Therefore, by conditioning his contact with his child to coincide with the quantum of contact permitted under the previously entered final parenting plan, the trial court's 20-year domestic violence protection order did not unlawfully prohibit Kuhlmeyer from having contact with his child.

Thus, the trial court did not err.

III

Kuhlmeyer next asserts that the trial court erred by imposing a CR 11 sanction against his trial counsel. We disagree.

The imposition of CR 11 sanctions lies within the sound discretion of the court and will only be reversed when the trial court abuses its discretion. Watson v. Maier, 64 Wn. App. 889, 891, 896, 827 P.2d 311 (1992); see also Biggs v. Vail, 124 Wn.2d 193, 197, 876 P.2d 448 (1994).

CR 11 requires attorneys to sign "[e]very pleading, motion, and legal memorandum" as a certification that the filing, as pertinent here, "is not

interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." CR 11(a)(3).

CR 11(a)(4) further states that

[i]f a pleading, motion, or legal memorandum is signed in violation of this rule, the court . . . may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party . . . a reasonable attorney fee.

CR 11 incorporates by reference CR 7, which regards the pleadings allowed and the form of motions. We note that

CR 7 neither requires nor prohibits a formal answer or response to a motion. It is nonetheless generally understood and expected that a written memorandum or brief in response to a contested motion will be submitted, together with any affidavits or other evidence that the nonmoving party wishes the court to consider.
    Responses are subject to the same form, filing, and service requirements that apply to motions.

3A ELIZABETH A. TURNER, WASHINGTON PRACTICE: RULES PRACTICE, CR 7, at 209 (7th ed. 2021). It therefore logically follows that "[b]y signing a motion (*or response*), an attorney makes the usual warranties under CR 11, and the court may impose sanctions for filing a document that violates CR 11." 3A TURNER, supra, at 200 (emphasis added).

Here, in August 2023, Latour filed a motion requesting that the court find Kuhlmeyer in contempt for, among else, failing to comply with a provision of the court's June 2023 order mandating Kuhlmeyer to attend state-certified domestic violence perpetrator treatment.

Later that month, Kuhlmeyer's trial counsel signed and filed with the trial court a document entitled "Opposition to Petitioner's Motion to Set Show Cause

Hearing."[6] The document commenced by stating that, "COMES NOW the Respondent, Sean Kuhlmeyer, by and through undersigned counsel, and files this opposition to Petitioner's *Motion to Set Show Cause Hearing* (the 'Contempt Motion')," and requested relief from the court in the form of "an order denying the *Contempt Motion* and an award of attorneys' fees." The document identified the relief requested, and provided a statement of facts, statement of issues, evidence relied upon, authority and argument, conclusion, a certification of counsel signed by Kuhlmeyer's trial counsel, and eight exhibits.

The trial court did not err by considering Kuhlmeyer's attorney's filing in opposition to Latour's contempt motion as subject to CR 11 sanctions. The filing constituted a legal document signed and filed with the trial court by Kuhlmeyer's designated counsel, presented itself as a response to a motion that was filed with the court, set forth not one, but two, requests for relief from the court, and contained legal argument and analysis, with 60 pages of supporting exhibits. Given all of that, the foregoing court filing was one that set forth the usual warranties that legal counsel provides to the court when an attorney signs such a filing.[7] It was, therefore, subject to sanction if such warranties failed to comply with the requirements of CR 11.

---

[6] We note that it was Latour, not Kuhlmeyer, who brought this document to our attention by designating it in a supplemental designation of clerks papers and mentioning it in her response briefing. We also note that Kuhlmeyer's briefing on appeal omitted mention of this document having been filed with the trial court by Kuhlmeyer's trial attorney.

[7] Kuhlmeyer asserts that a sanction was not warranted against his trial counsel because his trial counsel did not file any pleadings or any legal memorandum in response to Latour's contempt motion and because CR 11 does not authorize a sanction in response to oral argument.

Kuhlmeyer misses the mark. The record supports that the trial court imposed a sanction against Kuhlmeyer's attorney not in response to a court filing of a pleading or legal memorandum but, rather, in response to his attorney's signed court filing submitted in opposition to Latour's

Thus, the trial court did not abuse its discretion by considering such a filing as one subject to CR 11 sanctions.[8]  Accordingly, the trial court did not err by imposing a sanction against Kuhlmeyer's trial counsel.

Affirmed.

Dwyer, J.

WE CONCUR:

Birk, J.        Chung, J.

---

contempt motion.  Accordingly, for the reasons discussed herein, the trial court did not abuse its discretion in imposing such a sanction.

[8] Kuhlmeyer does not challenge the underlying basis of the sanction imposed by the trial court herein—that his trial counsel's court filing opposing Latour's contempt motion sought to relitigate issues previously and conclusively determined in the court's June 2023 domestic violence protection order.  Additionally, Kuhlmeyer's opening brief indicates that he "is not challenging the trial court's underlying contempt order or the assessment of CR 11 sanctions against Kuhlmeyer personally."  Accordingly, we do not consider the foregoing on appeal.